## CIVIL CASE MANAGEMENT PLAN

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| |
|---|
| **Kim Gorham-Dimaggio,** |
| VS |
| **Countrywide Home Loans, Inc. et al.** |

No.: **1:08-CV-0019, LEK/RFT**

        **IT IS HEREBY ORDERED that,** Pursuant to Rule 16(b), Federal Rules of Civil Procedure, a status and scheduling conference will be held in this case before the Honorable RANDOLPH F. TREECE, United States Magistrate Judge on **May 8, 2008, at 10:00 AM** at the United States Courthouse, Room Number 406, at Albany, New York.

        Counsel for all parties or individuals appearing <u>pro se</u> in the above captioned action are directed to confer in accordance with Fed. R. Civ. P. 26(f) with respect to all the agenda items listed below. That meeting must be attended in person or, if counsel for the parties are not located in the same city and do not agree to meet in person, then by telephone, and must be held at least **twenty-one (21) days** before the scheduled Rule 16 Conference. Following that Rule 26(f) meeting, a report of the results of that meeting, in the format set forth below, must be filed with the clerk within **fourteen (14) days** after the date of the Rule 26(f) meeting or not later than **ten (10) days** prior to the scheduled Rule 16 conference with the Court, whichever date is earlier. Matters which the Court will discuss at the status conference with include the following: (insert a separate subparagraph as necessary if the parties disagree):

**1)**    **JOINDER OF PARTIES:** Any application to join any person as a party to this action shall be made on or before the <u>7th day of April 2008.</u>

        Plaintiff intends to seek leave to add Bank of America as a party if the reported acquisition of Countrywide by Bank of America comes to pass.

**2)**    **AMENDMENT OF PLEADINGS:** Any application to amend the pleadings to this action shall be made on or before the <u>5th day of May 2008.</u>

        Plaintiff intends to seek leave to add Bank of America as a party if the reported acquisition of Countrywide by Bank of America comes to pass.

**3)     DISCOVERY:**  All discovery in this action shall be completed on or before the 6th day of October, 2008 **(Discovery time table is to be based on the complexity of the action)**

> The parties believe that this is a proper date for the completion of fact discovery.  For expert discovery, please see Section 12(F) below.

**4)     MOTIONS:**  All motions, including discovery motions, shall be made on or before the 8th day of December, 2008 **(Non-Dispositive motions including discovery motions may only be brought after the parties have complied with Section IX of General Order #25)**

> The parties believe that is an appropriate date if there is no expert discovery.  If there is, see Section 12(F) below.

**5)     PROPOSED DATE FOR THE COMMENCEMENT OF TRIAL:**  The action will be ready to proceed on trial or before the 5th day of March, 2009.  It is anticipated that the trial will take approximately 3-5 days to complete.  The parties request that the trial be held in Albany, N.Y. **(The proposed date for the commencement of trial must be within 18 months of the filing date).**

**6)     HAVE   THE   PARTIES   FILED   A   JURY   DEMAND:** _____ (YES)/_____(NO).

> Plaintiff has filed a jury demand.

**7)     DOES THE COURT HAVE SUBJECT MATTER JURISDICTION? ARE THE PARTIES SUBJECT TO THE COURT'S JURISDICTION? HAVE ALL PARTIES BEEN SERVED?**

> Plaintiff and the Countrywide defendants agree that the Court has subject matter jurisdiction based upon the allegations in the complaint.  Countrywide is contemplating a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Countrywide asserts that if that motion is successful, plaintiff's claimed basis of subject matter jurisdiction – federal question jurisdiction – may no longer exist.  The Countrywide defendants acknowledge that they have been served.  Plaintiff asserts that she has served defendant Investor Number 1688597323 by serving Countrywide.  Countrywide disputes this assertion.

**8)     WHAT ARE THE FACTUAL AND LEGAL BASES FOR PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES (INCLUDE COUNTERCLAIMS & CROSSCLAIMS, IF APPLICABLE)?**

<u>Plaintiff's Position:</u>

Defendants and Plaintiff had prior litigation. That resulting concession reached as a result of that prior litigation called for a payment of $1,411 from October, 2006 until 'at least August, 2007' (per defense counsel and numerous Defendant representatives), which included principal and interest and escrow.

Plaintiff made her payments in a timely manner. She sent her check with confirmation, ad it was received by Countrywide before April 30th (within 30 days).

In April, 2007, her bills started fluctuating wildly, without any notice whatsoever. The bills just changed and were different each and every month with statutory required notice as to why. And still, Defendant representatives kept telling Plaintiff on the phone her payment did not change, that it was still $1,411, and would be "until at least August, 2007." (Several employees sent Plaintiff "screen shots" proving her monthly payment was $1,411. These have been forwarded as mandatory disclosures).

Plaintiff paid the April amount if $1,411—in a timely manner—and Defendants returned the check to her immediately (before the first week of May). Defaulted Plaintiff on her mortgage. Closed down online access to her account. And was ready to start foreclosure. Within *days*, there was a car parked in front of her house taking notes.

She never received a phone call from any representative as to why. She was never told to "send more money". <u>Nothing.</u> The entire amount of $1,411, principal and interest and escrow, was simply sent back.

Between that time and December, 2007, in fact, Plaintiff has never received a phone call from any of Defendants representatives about the default mortgage, assist her, bring it current, or explain what was happening.

Defendants treated Plaintiff differently than other customers because she sued them in Gorham 1 and over concessions, and because of her disability. This is a case of retaliation. And they used knowledge of her disability and loss of sight to achieve their purpose. Defendants conspired with one another: "We will get her house and win back concessions." They waited for the right time, and completely defaulted Plaintiff—even though she never missed a payment. This was planned when Gorham 1 was concluded. Defendants just needed an

excuse, and kept her file segregated from the rest of the accounts, waiting for the slightest slip up.

Defendants claim they notified Plaintiff in February, 2007, that her payment was to increase in April, 07, because of an escrow shortage.

But Plaintiff has bills as Exhibits saying she never received a February statement. In fact, the bills she was receiving told her her escrow analysis was April, 2007.

## Countrywide's Position:

Factually, in accordance with the Mortgage and applicable rules and regulations, Countrywide accurately calculated and billed to plaintiff escrow amounts based upon charges for taxes and insurance. It believes the actual amounts due for taxes and insurance are undisputed as plaintiff did not dispute them in the complaint. Further, Countrywide did not unlawfully discriminate against plaintiff. It returned a payment, as was its right, because it was for less than the amount actually due. This is indeed the crux if plaintiff's claim – whether the amount billed was the amount actually due or whether, as plaintiff asserts, she (or her husband and attorney) received oral assurances that less was due.

Countrywide notes that its defenses are asserted in its Answer. In sum, and inter alia, (1) Countrywide did not unlawfully discriminate against plaintiff, (2) plaintiff has not been damaged by any of the alleged actions and is thus not entitled to actual or punitive damages and is not entitled to punitive damages under the Constitution of the United States, (3) the complaint fails to state a claim upon which relief can be granted under the statutes and rules relied upon in the complaint, as well as under the common law, (4) plaintiff did not make a "qualified written request" and therefore cannot assert certain claims based upon the Real Estate Settlement Procedures Act ("RESPA"), (5) plaintiff lacks standing to bring certain claims, (6) plaintiff's action is barred because the charges about which she complains, insurance and taxes, for which Countrywide escrowed, were all proper, and (7) plaintiff's claims are barred in whole or in part by the express language of the operative agreements, the Note, Mortgage and settlement agreement of the prior action between plaintiff and Countrywide.

Despite the myriad of legal and factual assertions in the complaint, plaintiff's theory ultimately appears to be that the amounts billed for escrow items went up unexpectedly (despite alleged assurances that they would not be increased for several months). Based on the alleged assurances, she declined to pay the full amount of her mortgage payment, paying a lesser amount instead.

**9)     WHAT FACTUAL AND LEGAL ISSUES ARE GENUINELY IN DISPUTE?**

The parties agree that factual issues in dispute include: whether plaintiff was promised the amounts due for escrow items would not increase for a certain time period, the accuracy of Countrywide's bills to plaintiff, whether Countrywide unlawfully discriminated against plaintiff / whether plaintiff was treated differently from other borrowers, whether Countrywide intended to, and acted to, steal plaintiff's home, whether Countrywide sent plaintiff an escrow analysis in February 2007, whether plaintiff made all payments timely, whether correspondence from David Permut, Countrywide's counsel, was a fraud, and the existence of telephone calls that allegedly constituted a nuisance.

In addition, Countrywide states that it does not now know whether plaintiff has a physical disability as alleged in the complaint and therefore now disputes it.

The parties agree that most if not all legal issues are disputed. They include: plaintiff's standing, whether she has stated a claim upon which relief can be granted, her entitlement to actual damages, punitive damages, and attorneys' fees, and the relevance of purported extra-contractual statements by Countrywide, namely those identified in the complaint allegedly taken from public source material. As explained below, Countrywide believes the factual and legal issues in the case can be significantly narrowed if it makes a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. However, plaintiff reports that she intends to seek to amend her complaint. Countrywide will consider any such motion if an amended complaint is filed.

**Plaintiff's Position:**

At this stage, both parties agree all items are in dispute.

However, Plaintiff can at this time move for Judgment on Count III.

Count III states, in part: "In addition, certain actions are required to be taken by the servicer, including the investigation of the matter raised by the borrower, and where appropriate, the correction of information as to the borrower's account (12 U.S.C.§2605[e][2]). Moreover, as a further protection to the borrower, for a period of 60 days during which the servicer is to take the aforesaid actions, it is barred from providing "information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency" (12 U.S.C. §2605[e][3]).

In short, if a consumer disputes an escrow amount with a "Qualified Written Request" a delinquency may not be placed on that consumers credit report for 60 days until the dispute is resolved.

In their Answer, Defendants admit the delinquency was immediately placed on Plaitiff's credit report, but thereafter deny they received a "Qualified Written Request."

As part of mandatory disclosures, Plaintiff sent Defendant the transcripts of numerous emails which will without a doubt prove to be a Qualified Written Request."

The issues are:

1. Why were representatives of Defendant telling Plaintiff her payment was different than the billed amount;

2. Why is there a discrepancy between the billed amount and internal computer documents;

3. Was Plaintiff retaliated against and discriminated against relative to Gorham 1 and internal policy and practice.

4. Why does Exhibit A of the Complaint written by Mr. Permut state the escrow analysis was done in February, while Plaintiff's bills state the analysis was done in April.

5. Why was derogatory information placed on Plaintiff's credit report immediately, when Federal law states Defendants had to wait 60 days.

6. Why was Plaintiff not called one time--not once--to so much as send in "another hundred bucks."

7. Was Plaintiff retaliated against and discriminated against, and do the actions in the Complaint amount to gross negligence and negligence.

## Countrywide's Position:

With respect to plaintiff's claims regarding Count III, there was no Qualified Written Request made, although as plaintiff points out, her counsel did send email correspondence to David Permut, the outside counsel to Countrywide who represented it in prior litigation with plaintiff.

Countrywide believes that any reporting made to credit agencies was proper.

Countrywide notes that the statutory basis for Count III, provides for actual damages and additional damages not to exceed $1,000. 12 U.S.C. §2605(f)(1). Plaintiff does not actually allege that she was actually damaged.

In addition, Countrywide notes that plaintiff's counsel, Richard DiMaggio, is the husband of plaintiff, Kim Gorham-DiMaggio. Based upon the allegations in the complaint, he is a likely witness in the case concerning significant matters. Countrywide reserves its rights to seek to disqualify Mr. DiMaggio based upon DR 5-102 or other applicable rule.

## 10)   CAN THE ISSUES IN LITIGATION BE NARROWED BY AGREEMENT OR BY MOTIONS? ARE THERE DISPOSITIVE OR PARTIALLY DISPOSITIVE ISSUES APPROPRIATE FOR DECISION ON MOION?

The parties believe that the issues can be narrowed by dispositive motion and that certain issues may be amenable to agreement. For instance, the parties can likely agree on invoices actually sent to plaintiff, but since only excerpts from certain invoices were attached to the complaint, the parties cannot now agree on them.

In addition, both parties believe that they can succeed on dispositive motions.

### Countrywide's Position

Countrywide has considered making a motion pursuant to Rule 12(c) of the Federal Rule of Civil Procedure for judgment on the pleadings. It notes, however, that plaintiff has asserted that she intends to seek to amend the complaint. If she does so, it will review the amended complaint and determine whether to make such a motion. It believes it is likely that it will be successful in dismissing most (and possibly all) of plaintiff's claims. The decision on such motion will significantly affect the discovery plan in this case. For instance, plaintiff seeks discovery to support her allegation of "disparate treatment" based upon her alleged physical disability. She seeks discovery of information concerning other loans for borrowers who do not have physical disabilities. Not only does Countrywide not keep track of which borrowers have disabilities , but contracts with other borrowers are not relevant to the what is ultimately the very simple question here: Did Countrywide properly calculate and bill for escrow items?

The decision on such a motion will also affect discovery in that it will curtail plaintiff's hoped-for fishing expedition based upon extraordinarily general allegations of intentional discrimination on the basis of physical disability.

A decision on the contemplated motion will determine if plaintiff may be entitled to extraordinarily broad discovery that may require several instances of court intervention on scope or if she is entitled to discovery limited to whether the billing was accurate, as the accuracy of escrow items and bills truly forms the gravamen of the complaint.

## 11)   WHAT SPECIFIC RELIEF DO THE PARTIES SEEK? WHAT ARE THE DAMAGES SOUGHT?

Plaintiff seeks actual damages, compensatory damages, and punitive damages (of $1 million on each of several counts) as well as attorneys' fees and costs.

Defendant Countrywide seeks dismissal. In addition, based upon plaintiff's payment default, Countrywide is considering seeking to compel plaintiff to pay undisputed amounts (namely principal and interest and undisputed amounts of escrow) into Court or in the alternative to foreclose.

## 12)   DISCOVERY PLAN:

### A.  Mandatory Disclosures

The parties will exchange the mandatory disclosures required under Rule 26(a)(1) on or before April 5, 2008.

#### Plaintiff's Position:

Plaintiff has made mandatory disclosures. Defendant has not.

#### Countrywide's Position:

Plaintiff has produced certain documents, but she has not produced all information required by Rule 26(a)(1). Countrywide will comply with that Rule by the date agreed upon and so-ordered.

### B.  Subjects of Disclosure

The parties jointly agree that discovery will be needed to address the following subjects:

#### Plaintiff's Position:

##### Plaintiff's Position on Discovery to Prove Disparate Treatment

Because Plaintiff is alleging discriminatory treatment relative to the servicing of her loan, she will be seeking the files of other consumers. She is alleging

disparate treatment both under the Equal Credit Opportunity Act, that Defendants retaliated against her for her actions under Gorham 1, and because of her disability (Plaintiff is legally blind, and Defendants admit knowledge of this n their Answer)/

To recall the facts:

Plaintiff made a payment on her mortgage of $1,411 for the month of April, it was not thirty days late, and Defendants sent her the payment back, defaulted her on her mortgage, denied her access to her online account, and within two weeks had a car parked out front of her home taking notes on it.

Defendants claim they sent her the check back and defaulted her on her entire mortgage because her true payment was $1,528.

Plaintiff counters that two different representatives told her her payment was $1,411 "until September, 2007", and submitted as mandatory disclosures screen shots Defendant representatives sent to her to prove her payment was $1,411. That is, when Defendant representatives called Plaintiff to get her to refinance, they repeatedly told her her payment was $1,411, and to prove it, faxed her "screen shots" of her account information.

Plaintiff is asserting she was not in default on her mortgage at all.

**Retaliation under the ECOA and Discrimination Based on Disability**

Gorham 1 was a case involving 15 USC 1692. There were concessions paid to her in that case, and she now claims Defendants did everything in their power to retaliate against her. That retaliation is defaulting her in the instant case.

Retaliation is based on 15 USC 1691(a)(3), which makes it unlawful to discriminate and retaliate against a consumer because that consumer exercised their rights under the Equal Credit Opportunity Act, and Gorham 1 was litigation involving the ECOA.

The discrimination claim is based on Plaintiff's medical condition. That she is legally blind, and Defendants knew she was legally blind, and discriminated against her because of this disability.

With these assertions, Plaintiff must now prove other customers of Defendants were treated differently, more positively.

Plaintiff has proffered as Exhibits to the Complaint some of Defendants internal operating procedures and SEC filings. The internal operating procedures repeatedly state that Defendants are doing whatever they can do

"keep consumers in their homes" and "keep the dream alive", including offering customers deferment, forbearances and modifications. That representatives are "in constant contact" with customers. And "community outreach programs". One such policy begins: "Countrywide believes keeping owners in their homes is just as important as assisting individuals in achieving homeownership. We understand that financial setbacks are sometimes unavoidable, and we are committed to offering options to customers who have met with temporary hardship. The company reaches out to these customers in a variety of ways…"

Plaintiff first can prove that Plaintiff wasn't offered any of these programs that are readily available to other consumers. In fact, she wasn't even late on her payment. Defendants simply returned her check and moved to foreclose because of a disputed shortage of a hundred dollars. Indeed, had Defendants simply called Plaintiff and instructed her to send a hundred bucks, or allowed her to make the payment online, litigation would not have even occurred. But Plaintiff wasn't called—not once.

But breach of internal operating procedures are only part of the discovery process. In order to further prove the claim, Plaintiff must prove by statistical analysis that she was treated disparately—both because of her disability and because of her exercise of rights under the Equal Credit Opportunity Act.

**Law as to Discovery of Statistical Data**

The Legislative intent of 15 USC 1691(a)(3) states that the allocation of burden is similar to that of Title VII cases.

To prove a Title VII case, The Second Circuit has repeatedly held:

"It is well established that an individual disparate treatment plaintiff may use statistical evidence regarding the employers general practices at the pretext stage to help rebut the employers purported nondiscriminatory explanation." McDonnell Douglas, 411 US at 804-805, Liberman v. Gant, 630 F. 2d 60, 68-69 (2d Cir. 1980); Logan v. St. Lukes, 636 F. Supp. 226, 234 (S.D.N.Y.), aff'd 805 F. 2d 391 (2d Cir. 1986).

**Protective Order**

To that end, Plaintiff will be seeking per a Protective Order confidential account information as to non disabled customers. She must use statistical evidence to rpove she was, in fact, treated differently.

**Countrywide's Position:**

This is not the forum to litigate the merits of the action.

Plaintiff hopes to engage in an extraordinarily broad fishing expedation based on the most meager of allegations in the complaint combined with pure speculation that she was discriminated against on the basis of an alleged physical disability. She pleads no specificity in this regard at all.

The scope of discovery will largely depend upon the outcome of Countrywide's contemplated motion to dismiss. This is really a straightforward dispute: plaintiff claims that Countrywide improperly raised the portion of her mortgage payment for escrow items (acknowledging that she has a fixed-rate mortgage). Thus, the only real issues are (1) what amounts were owed for taxes and insurance, (2) when did plaintiff make payments and in what amount, and (3) was Countrywide entitled to charge late fees, and (4) based upon the foregoing, did Countrywide properly bill plaintiff for her mortgage, including the escrow items. After all, she acknowledges paying less than the amount billed, and has stopped making payments altogether.

Discovery is and should be extremely limited. As will be explained in Countrywide's anticipated motion pursuant to Fed. R. Civ. P. 12(c) or possibly for a protective order concerning the scope of discovery, most of plaintiff's claims are legally not cognizable and do not entitle her to the expensive fishing expedition she seeks concerning the approximately 8.7 million loans Countrywide serviced in 2007 Producing data for so many loans would be extraordinarily burdensome and utterly irrelevant. It simply could not lead to the discovery of admissible evidence because Countrywide does not keep track of whether its borrowers have physical disabilities. In addition, it would be incredibly time-consuming and burdensome to review such a production and redact data Countrywide was permitted to redact to protect its customers.

It is unclear whether plaintiff's claims rest primarily on allegations of discrimination based upon disability or on allegations that Countrywide discriminated against her due to prior litigation. In any event, the prior litigation was settled on terms that gave plaintiff a highly favorable interest rate on her mortgage and inquiries into other borrowers will not help her in establishing that she did not default on the modified loan by not paying amounts due.

## C.  Discovery Sequence

Describe the parties' understanding regarding the timing of the discovery, and state whether it is anticipated that discovery will be phased to address different issues in stages.

The parties agree that there can be two phases of discovery: the first to address the merits and the second concerning the allegations for recovery of attorneys' fees, if such claim is allowed.

### Countrywide's Position:

There are two threshold questions in this action: (1) Did Countrywide properly calculate and bill for escrow items and (2) were plaintiff's payments made timely and in full.  Discovery should be limited to these questions in the first phase of discovery.  After discovery on those issues, either party may choose to move for summary judgment.

## D.  Written Discovery

Describe the written discovery demands which the parties contemplate serving under Rules 33, 34 and 36, including when they will be promulgated, the areas to be covered, and whether there is any need for any party to exceed the number of interrogatories permitted under Rule 33.

Plaintiff contemplates serving written discovery demands concerning her claims and Countrywide's defenses.

Countrywide contemplates serving interrogatories and documents demands for evidence that may support or refute any of plaintiff's surviving claims and its defenses.  In addition, it may serve requests for admission concerning the amount and calculation of escrow items and other relevant issues.

Neither party anticipates that there is a need to exceed the number of interrogatories under Rule 33.

## E.  Depositions

Set forth the parties' expectations regarding depositions, including the approximate number to be taken, their location, a general description of the deponents, and an indication of whether any non-party fact depositions are anticipated.

Plaintiff anticipates seeking to take depositions of Countrywide (including of any persons who handled her account) concerning escrow calculations, loss mitigation, and why information available to Countrywide employees with

whom she communicated may have differed from information otherwise available to Countrywide.

Countrywide anticipates taking the depositions of plaintiff and possibly her husband and counsel, Richard Dimaggio concerning the allegations in the complaint (including communications they had with Countrywide).

**F. Experts**

Set forth the parties' expectations regarding the retention of experts, and identify any particular issues to be addressed by the court concerning the retention and exchange of the information regarding experts, including whether the parties seek a variance from the expert disclosure requirements of the form uniform pretrial scheduling order typically issued by the court (i.e., initial expert disclosure at least ninety days, responsive expert disclosures at least forty-five days, and rebuttal reports due at least thirty days, before the close of discovery).

Plaintiff expects that she may have a testifying expert concerning escrow calculations.

Countrywide does not anticipate calling any expert witnesses, unless plaintiff does so, at which point it may seek rebuttal expert testimony.

The parties do not seek a variance from the expert disclosure requirements of the form uniform pretrial scheduling order typically issued by the court, but state that the discovery schedule agreed upon in Section 3 hereof is based upon no expert discovery. If there is expert discovery, the parties request that the close of discovery and trial dates be pushed back 90 days to accommodate such discovery.

**G. Electronic Discovery**

Set forth the parties' understanding and expectations regarding discovery of electronically stored information. This description should include any agreements reached with respect to the retention of electronically stored information and the manner in which it will be produced, if requested. The parties should also identify any agreements regarding the manner in which electronically stored information subject to claims of privilege or work product protection will be handled, and whether a court order will be requested, either on stipulation or otherwise, to address this issue. If an agreement has been reached on the entry of such an order, provide a brief description of the provisions which will be included in a proposed order.

The parties agree that any electronically stored information that is currently anticipated being requested in discovery may be produced in paper or

equivalent form. They also agree that any electronically stored information that is subject to a claim of privilege that is requested in discovery will, in accordance with the applicable rules, be appropriately identified on a privilege log.

Neither party believes a discovery order is needed beyond what is contained herein.

## H. **Protective Orders**

If the parties anticipate requesting a protective order from the court pursuant to Rule 26(c), describe the basis for the request and nature of the proposed protective order.

### **Plaintiff's Position:**

Yes. A protective order will be required to obtain the identities and addresses of the other consumers as outlined above.

Defendants internal policies state as follows. But interestingly, not a single option was offered to Plaintiff. Plaintiff will seek discovery as to those consumers offer options, to prove disparate impact statistics:

"Countrywide believes keeping owners in their homes is just as important as assisting individuals in achieving homeownership. We understand that financial setbacks are sometimes unavoidable, and we are committed to offering options to customers who have met with temporary hardship. The company reaches out to these customers in a variety of ways:

**Phone Counseling Teams**. We employ dedicated teams of trained counselors, available by phone to assist homeowners who have fallen behind on monthly payments. The teams contact customers and ask if they can be of assistance. These specialists then work closely with homeowners, explaining options such as modified loan payment assistance and other forbearance programs.

**Friendly, Personalized Resource Mailings**. Countrywide recognizes that homeowners are sometimes reluctant to contact a lender when payments are in arrears. We send videotapes and postcards, both of which invite homeowners to call us about making arrangements. These efforts ensure customers that we are flexible, care about keeping them in their homes, and are ready, willing and able to offer them assistance.

**Counselors in Communities**. Countrywide extended its outreach to distressed homeowners in their own communities. Small workout teams of

counselors travel to Countrywide branch offices to meet face-to-face with homeowners who need their help. This highly successful effort, launched in 1999, has assisted hundreds of homeowners who were facing financial difficulties.

There are several workout programs available to Countrywide's borrowers. To decide which alternative best meets the borrower's individual situation, our counselors work one-on-one with customers to find a solution. Program options include repayment plans, loan modifications and advances......

At Countrywide, maintaining the dream of homeownership is every bit as important as achieving the dream. We are dedicated to ensuring that our customers receive the help and assistance they need throughout our relationship with them. "

**Countrywide's Position:**

Plaintiff asserts that she will seek discovery concerning loans made to persons who do not have physical disabilities to support her claim of disparate treatment and discrimination as well as concerning offers made to other consumers These areas of inquiry constitute an extraordinarily broad fishing expedition to which she is not entitled. Depending upon the contends of plaintiff's anticipated amended complaint, Countrywide will likely seek to limit such discovery by way of a motion pursuant to Rule 12(c) (thereby eliminating claims for which plaintiff may be otherwise entitled to discovery) or for a protective order when it better understands the precise scope of discovery plaintiff seeks.

I. **Anticipated Issues Requiring Court Intervention**

Provide a brief description of any discovery related issues which, the parties reasonably anticipate, may require court intervention.

The parties expect they may need Court intervention concerning the scope of discovery to which plaintiff is entitled, particularly as concerns Countrywide's dealings with other borrowers and its lending practices generally.

**13) IS IT POSSIBLE TO REDUCE THE LENGTH OF TRIAL BY STIPULATION, USE OF SUMMARIES OR STATEMENTS, OR OTHER EXPEDITED MEANS OF PRESENTING EVIDENCE? IS IT FEASIBLE AND DESIRABLE TO BIFURCATE ISSUES FOR TRIAL?**

It is too early to anticipate what the parties may be willing to stipulate to, although since both parties anticipate resolution (at least in part) by summary disposition, it is possible the parties will be will to agree to such procedures.

**14)   ARE THERE RELATED CASES PENDING BEFORE THE JUDGES OF THIS COURT?**

> No.

**15)   IN CLASS ACTIONS, WHEN AND HOW WILL THE CLASS BE CERTIFIED?**

> N/A

**16)   WHAT ARE THE PROSPECTS FOR SETTLEMENT? Please circle below for prospect of settlement.**

> 1-----2-----3-----4-----5-----6-----7-----8-----9-----10
> (VERY UNLIKELY)→→→→→→→→→→→→ →→ (LIKELY)

CANNOT BE EVALUATED PRIOR TO _____ (DATE)

> Countrywide believes that this cannot be evaluated prior to resolution of its anticipated motion to dismiss.

> Plaintiff and Countrywide believe that the question cannot be evaluated until after discovery.

**HOW CAN SETTLEMENT EFFORTS BE ASSISTED**




*(Do not indicated any monetary amounts at this time, settlement will be explored by the Magistrate Judge at the time of the initial status conference)*

*COMPLETE QUESTION 17 ONLY IF YOUR FILING ORDER COVER SHEET WAS CHECKED AS AN ADR TRACK CASE.  THE PROGRAMS LISTED BELOW ARE COURT-ANNEXED AND NON-BINDING.*

**17)   IF YOUR CASE WAS SELECTED AS A QUALIFYING CONTRACT, TORT, OR NON-PRISONER CIVIL RIGHTS ACTION, PLEASE SELECT THE PREFERRED ADR METHOD.**

_____        ARBITRATION

_____        MEDIATION

_____        EARLY NEUTRAL EVALUATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pursuant to Fed. R. Civ. P. 26(f) meetings were held beginning February 19, 2008

by telephone and were attended by:


Richard Dimaggio for plaintiff(s)


Kenneth C. Rudd for defendant(s), The Countrywide Defendants


At the Rule 16(b) conference, the Court will issue an order directing the future proceedings in this action. The parties are advised that failure to comply with this order may result in the imposition of sanctions pursuant to Federal Rules of Civil Procedure 16(f).

***Please detach this case management plan form and return the completed form to the clerk for filing at least ten (10) days in advance of the conference date.***
Case Management Plan
Form Date – 06/13/2007


518980.v3/2978-084/KCR