UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Kim Gorham-Dimaggio,

                Plaintiff,

   -against-                       1:08-CV-00019
                                    (LEK/RFT)

Countrywide Home Loans, Inc.; Countrywide
Home Loans, Inc., LP; Countrywide Home
Loans Servicing, LP; Countrywide Financial
Corp.; Investor Number 1688597323

                Defendants.

---

### MEMORANDUM-DECISION AND ORDER[1]

On April 7, 2008, Defendant Countrywide Financial Corp., along with its affiliates, Countrywide Home Loans, Inc.; Countrywide Home Loans, Inc., LP; Countrywide Home Loans Servicing, LP, (collectively, "Defendants") and Investor Number 1688597323[2], filed a motion pursuant to FED. R. CIV. P. 12(b)(6) to dismiss all claims asserted by the Plaintiff, Kim Gorham-DiMaggio, in her Amended Complaint.  Motion (Dkt. No. 17); Am. Compl. (Dkt. No. 15). Plaintiff's Amended Complaint alleges that the Defendants engaged in discriminatory conduct by manipulating and misrepresenting escrow payment information, causing her to default on her mortgage.  See Am. Compl.  Plaintiff is seeking $8,000,000 in connection with various federal and state law claims.

---

[1] For printed publication in the Federal Reporter.

[2] Information regarding the named investor has not been presented.  References to Defendants are to the combined Countrywide entities, as Plaintiff does not distinguish among them.

I.     **Background**[3]

On June 13, 2003, Plaintiff, a resident of New York, obtained a mortgage loan on her home from the Defendants in the amount of $145,350.  Mortgage Contract (Dkt. No. 17, Attach. 9). Under the terms of the mortgage contract ("the Note"), Plaintiff became responsible for making all monthly payments in principle and escrow to the Defendants, including Defendants' projections of escrow, "unless Lender t[old] [Plaintiff], in writing, that [Plaintiff] d[id] not have to do so."  Am. Compl. ¶ 19; Note §3(a).  The Note further specifies, "[i]f [Plaintiff] do[es] not pay the full amount of each monthly payment on the date it is due, [Plaintiff] will be in default."  Am. Compl. ¶ 19.

A previous default was settled by the parties in September 29, 2005, and a subsequent dispute was settled in October 2006 ("Gorham I").  Aff. of David L. Permut at ¶5 (Dkt. No. 17, Attach. 3); Am. Compl. ¶ 29.  The current interest owed under the mortgage is a fixed rate reached as a result of the settlement from Gorham I.  Id.

In March 2007, Plaintiff received a bill from the Defendants for $1,506. Am. Compl. ¶ 53. The amount of the March bill was an unexpected increase for the Plaintiff, as her combined monthly principal and escrow payment had been $1,411 since November 2006.  Id. ¶ 52.  Plaintiff paid the full amount of the March bill.  Id. ¶ 53.  In April 2007, Plaintiff received a bill in the amount of $1,528, but paid only $1,411.  Id. ¶ 59.  The check was not cashed, but was returned to the Plaintiff on May 5, 2007 because it was $117 dollars less than the amount owed under the April bill.  Id. ¶ 8, 13.  Plaintiff claims the Defendants then prevented her from accessing her online account on May 5, and defaulted her on the mortgage loan shortly thereafter (no date given).  Id. ¶ 8.

---

[3] The facts are taken from the Plaintiff's Amended Complaint, and for the purposes of this Motion, assumed to be true.

Subsequently, Plaintiff's attorney contacted Defendants' attorney from <u>Gorham I</u>, David L. Permut, via email on June 13, 2007 requesting an explanation for the escrow increase.  Am. Compl. ¶¶ 67, 68.  An email response from Permut explained that the increased amount was established following an escrow re-analysis that was performed by the Defendants on February 16, 2007.  <u>Id.</u> ¶ 68.  The email further stated that notice of the increase was included in Plaintiff's February 2007 billing statement.  <u>Id.</u> ¶ 68.  Plaintiff maintains she never received a statement of the escrow increase in February, and that her billing statements represented that the escrow re-analysis would not be performed until April 2007.  <u>Id.</u> ¶¶ 70, 71.  Plaintiff does not allege that she attempted to call Countrywide for an explanation, but instead claims that several[4] Countrywide representatives called her around this time in an unrelated attempt to convince her to refinance her home, during which calls they assured her that the escrow amount had not increased, and would not increase until September 2007.  Am. Compl. ¶¶ 71, 75, 97.  These representatives sent Plaintiff screen shots of her account information on February 28, 2007 and July 18, 2007 to verify this information.  <u>Id.</u> ¶ 84.  On both occasions, the screen shot showed that the total monthly payment was still $1,411, and that the escrow amount had not changed.  <u>Id.</u> ¶ 84.  Plaintiff does not provide the names or titles of any of the representatives who provided this information.  Even after the March and April increase, Plaintiff claims her monthly billing statements contained information that an escrow re-analysis would not be performed until April 2007.  Based on this, she believed that the amount she was being charged was incorrect.  <u>Id.</u> ¶ 71.

Unsatisfied with the earlier response from Mr. Permut, Plaintiff sent Defendants a written

---

[4] Plaintiff states she received "lots of calls" from the Defendants, but does not provide a specific number.  <u>Id.</u> ¶ 97.

request for information regarding the escrow increase "on or about June 15, 2007." Am. Compl. ¶ 86.  Plaintiff claims she never received a response to her request.  Id.  ¶ 86.

Without stating when it happened, Plaintiff claims that the Defendants sent her account to a foreclosure attorney.  Am. Compl. ¶ 94.  Plaintiff further argues that Defendant's numerous call-centers or help-lines established to assist defaulted borrowers were never specifically offered to assist her.  Id. ¶ 95-96.

Plaintiff filed the present action on January 7, 2008, seeking redress for the alleged discriminatory and retaliatory practices of the Defendants in servicing her escrow account.  Plaintiff claims that the Defendants discriminated against her in the manner prescribed above, in an effort to recoup concessions arising out of the Gorham I settlement.  Amend. Compl. ¶ 26, 28  (Dkt. No. 15). She seeks relief under several federal and state law claims.

## II.   Discussion

### A.   Standard of Review

Under a FED. R. CIV. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a district court is required to "accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[ ]."  Ruggles v. Wellpoint Inc., 253 F.R.D. 61, 65 (N.D.N.Y. 2008) (citing FED. R. CIV. P. 12(b)(6)); Charles W. v. Maul, 214 F.3d 350, 356 (2d Cir. 2000) (noting that Rule 12(b)(6) requires that the court "read the complaint liberally, drawing all reasonable inferences in plaintiff's favor.").

To withstand this Motion, the Plaintiff must plead facts sufficient to establish that her claim for relief is more than just conceivable, and is in fact "plausible on its face."  Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1974 (2007).  In determining whether the complaint is

sufficiently plausible, a district court is typically required to look only at "the allegations on the face

of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Thus, matters outside the

pleadings are normally excluded from review unless the court decides to treat the motion as one for

summary judgment under FED. R. CIV. P. 56. FED. R. CIV. P. 12(b)(6). However, "[i]n certain

circumstances, the court [may] permissibly consider documents other than the complaint [when] . . .

[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of

the pleading." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

**B.      Claims I and II: FHA**

Plaintiff raises two claims of discrimination under the Fair Housing Act (FHA), 42 U.S.C. §

3601 *et seq.* Plaintiff's first claim arises under § 3605, "Discrimination in Residential Real Estate

Related Transactions," which states in pertinent part:

> "(a) In general
> It shall be unlawful for any person or other entity whose business includes engaging
> in residential real estate-related transactions to discriminate against any person in
> making available such a transaction, or in the terms or conditions of such a
> transaction, because of race, color, religion, sex, handicap, familial status, or national
> origin."

42 U.S.C. § 3605(a).

The statute defines a "real estate-related transaction" as "[t]he making or purchasing of loans

or providing other financial assistance (A) for purchasing, constructing, improving, repairing, or

maintaining a dwelling; or (B) secured by residential real estate." 42 U.S.C. § 3605(b)(1)(A)(B); 24

C.F.R. § 100.120.

Plaintiff's second claim under the FHA arises under 42 U.S.C. § 3604, "Discrimination in

the Sale or Renting of Houses or other Prohibited Practices," which makes it unlawful to "refus[e]

to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

Construing Plaintiff's claims together, Plaintiff is alleging that the Defendants discriminated against her on the basis of her disability by not providing her with financial assistance afforded to similarly situated individuals, and by not making reasonable accommodations on behalf of her disability.

**1.      FHA Section 3605 Claim**

In order to state a claim under § 3605, the plaintiff must plead "(1) that [s]he is a member of a protected class; (2) that [s]he attempted to engage in a 'real estate-related transaction' and met all relevant qualifications for doing so; (3) that the defendant refused to transact business with [her] despite h[er] qualifications; and (4) that the defendants continued to engage in the type of transaction in question with other parties with similar qualifications."  Johnson v. Citibank, 234 F.3d 1262 (2d Cir. 2000).

Plaintiff is legally blind (90% and 100% vision loss in each eye) and accordingly is a member of a protected class.  Pl.'s Aff. ¶3 (Dkt. No. 18, Attach. 2).  However, Plaintiff fails to sufficiently plead the other required elements for a prima facie claim of discrimination under the statute.  Plaintiff does not allege that she ever attempted to procure new financing, or even information regarding such financing from the Defendants.  Therefore, any claim that the Defendants refused to provide her with financing options must fail.  Plaintiff's complaint draws significant attention to Defendants' call centers and hotlines that assist defaulted borrowers, erroneously suggesting that their failure to assist the Plaintiff in this manner is tantamount to

6

discrimination.  This line of reasoning is fundamentally flawed, as it incorrectly characterizes what "financial assistance" means under the statute.  Under a plain language of the statute, "financial assistance" means providing prospective purchasers with financing information to help them purchase or rent a home, and does not include assistance for borrowers who have defaulted on their loans.  42 U.S.C. § 3605(b)(1); 24 C.F.R. § 100.120; see also  NAACP  v. American Family Mut. Ins. Co., 978 F.2d 287 (7th Cir. 1992) (noting that "it would strain language past the breaking point to treat property or casualty insurance as 'financial assistance'--let alone as assistance for 'purchasing . . . a dwelling.'").

Moreover, Plaintiff has offered only conclusory allegations to demonstrate that discriminatory measures were implemented **because** of her disability, and that "able-bodied" persons were not affected.  See Wiltshire v. Danraj, 421 F. Supp. 2d 544, 555  (E.D.N.Y. 2005) ("a conclusory allegation that the Plaintiffs discriminated against the Defendants because they were 'minority buyers' is insufficient to state a cause of action under the FHA."); Powell v. American General Finance, 310 F. Supp. 2d 481 (N.D.N.Y. 2004).  Plaintiff's conclusory allegations are actually contradicted by numerous other allegations by Plaintiff that the Defendants' motive in the conduct alleged was *retaliatory*; made in an effort to recoup concessions arising from Gorham I, and not motivated by any animus towards her status as a disabled person.  See, e.g., Wiltshire v. Danraj, 421 F. Supp. 2d 544, 555  (E.D.N.Y. 2005).  Accordingly, Plaintiff has failed to plead the elements required for a claim under this section.

### 2.      FHA Section 3604 Claim

Plaintiff's claim under the FHA that Defendants failed to make a reasonable accommodation is similarly without merit.  Plaintiff has not established the elements for a discrimination claim

because Plaintiff has not alleged that any request for an accommodation was ever made, or how any accommodation from the Defendants would have prevented her from defaulting on the loan. Instead, Plaintiff stated in her own affidavit that she is fully capable of reading the monthly account statements despite her visual disability, and did not require any specialized treatment from the Defendants. ("[A]nd yes, with special glasses, I can read, and do read"). Pl.'s Aff. ¶ 15 (Dkt. No. 18, Attach. 2). Therefore, Plaintiff has failed to demonstrate the existence of a plausible claim for failure to make a reasonable accommodation, and both FHA claims must be dismissed.

C.     **Claims III and IV: ECOA**

Plaintiff brings two causes of action pursuant to the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.* First, Plaintiff claims the Defendants discriminated against her because she had previously exercised her rights under the Fair Debt Collection Act against the Defendants in Gorham I. Am. Compl. ¶ 180. In making this assertion, Plaintiff relies specifically on §1691(a)(3), which states in pertinent part:

> (a) It shall be unlawful for any creditor to discriminate against any *applicant*, with respect to any aspect of a credit transaction--
> . . .
> (3) because the applicant has in good faith exercised any right under this chapter.

(emphasis added). The term *applicant* is defined as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).

Here, Plaintiff was not an applicant within the plain meaning of the ECOA, and therefore can not invoke the protections of the Act. See Stoyanovich v. Fine Art Capital LLC, No. 06-CIV-

13158, 2007 WL 2363656, at *2 (S.D.N.Y. August 17, 2007) (noting the Plaintiff must be a "loan applicant" to recover under the ECOA).  Any discrimination alleged in the complaint occurred during the servicing of Plaintiff's *existing* loan.  Even after Plaintiff defaulted, she did not reapply for a new loan.  Because she is not an applicant under the statute, this claim must be dismissed.

Plaintiff's second claim under the ECOA alleges that the Defendants discriminated against her by taking *adverse action*[5] with regard to her current loan.  Specifically, Plaintiff claims that "[t]he terms of her mortgage were completely terminated, her payment was sent back, the terms of her escrow analysis was altered, and . . . she was retaliated against in the treatment and servicing of her loan." Pl.'s Resp. at 29.  The Court need not address the merits of this claim because the court has already established that Plaintiff was not an applicant and thus can not recover under the ECOA.[6]

**D.    Claims V and VI: RESPA**

Plaintiff brings her fifth and sixth causes of action under the Real Estate Settlement Procedure Act (RESPA), codified as 12 U.S.C. §2601 *et seq*.  Plaintiff's fifth claim alleges that the Defendants violated RESPA by failing to adequately respond to her qualified written request within

---

[4] 15 U.S.C. § 1691(d)(6), which Plaintiff's second ECOA claim is based on, defines "adverse action" as: "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.  Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit."

[6] Even assuming, *arguendo*, that  Plaintiff was an applicant under the ECOA, the Court notes that the harm alleged does not constitute an "adverse action " as defined by 15 U.S.C. § 1691(d)(6). Moreover, insofar as the actions described are the results of Defendants' efforts to collect following Plaintiff's default, the very case cited by Plaintiff in support states that a violation of the ECOA "cannot be shown by simply alleging that the creditor is attempting to collect on [a] debt."  Lewis v. ACB Bus. Serv., 135 F.3d 389, 406-407 (6th Cir. 1998).

20 days in accordance with the mandatory guidelines.  Am. Compl. ¶ 216.  Plaintiff's sixth claim

alleges that the Defendants violated the statute by placing derogatory information on her credit

report within 60 days of receiving the qualified written request.  Id. ¶ 210, 211.  Both claims are

brought pursuant to § 2605(e)(1)(B) of the Act.

    **1.    Underlying Law**

        a.    <u>First RESPA Claim: 12 U.S.C. § 2605(e)</u>

Plaintiff's claim for failure to adequately respond to a qualified written request arises

under 12 U.S.C. § 2605(e)(1)(A), which states:

> "[i]f any servicer of a federally related mortgage loan receives a *qualified written
> request*  from the borrower (or an agent of the borrower) for information relating to
> the servicing of such loan, the servicer shall provide a written response
> acknowledging receipt of the correspondence within 20 days (excluding legal public
> holidays, Saturdays, and Sundays) unless the action requested is taken within such
> period."

12 U.S.C. § 2605 (e)(1)(A)(emphasis added).  12 U.S.C. § 2605(e)(1)(B) defines a qualified written

request as:

> "[A] written correspondence, other than notice on a payment coupon or other
> payment medium supplied by the servicer, that (i) includes, or otherwise enables the
> servicer to identify, the name and account of the borrower; and(ii) includes a
> statement of the reasons for the belief of the borrower, to the extent applicable, that
> the account is in error or provides sufficient detail to the servicer regarding other
> information sought by the borrower."

12 U.S.C. § 2605(e)(1)(B).  The statute also requires that once a qualified written request has been

made, the creditor has 60 days to provide the borrower with either:

> "a written explanation or clarification that includes--
> (B)
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the
> account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or

department of, the servicer who can provide assistance to the borrower ; or
(C)
(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."

12 U.S.C. § 2605 (e)(2)(B)—(C).

        b.    <u>Second RESPA Claim: 12 U.S.C. § 2605(e)(3)</u>

Plaintiff's second claim is brought pursuant to 12 U.S.C. § 2605 (e)(3), which states that during the 60 day time period following the receipt of a qualified written request, "a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency." 12 U.S.C. § 2605(e)(3).

    **2.**    **Analysis**

Defendants do not dispute that they are servicers of federally related mortgage loans subject to the provisions of the statute. Defendants do argue, however, that the email exchange between Plaintiff's attorney and Mr. Permut—referred to in Plaintiff's Complaint as the first qualified written request—is not a qualified written request under the plain meaning of RESPA. 12 U.S.C. § 2605 (e)(1)(B). Defendants are correct. The statute's requirements that a qualified request be made in *writing*, include the full name and account number of the borrower "or otherwise enable the servicer to identify" the borrower, and be *received* by the Creditor, are noticeably lacking in Plaintiff's email to Mr. Permut. Email (Dkt. No. 15, Attach. 10). Mr. Permut is an outside lawyer who had represented the Defendants in <u>Gorham I</u>, not the actual Lender or loan servicer upon whom a request is due. Am. Compl. ¶ 67; 12 U.S.C. § 2605 (e)(1)(A). Indeed, the lack of receipt alone

has been found fatal in establishing failure to respond to a qualified written request.  See Morilus v. Countrywide Home Loans, Inc., 2007 WL 1810676 at *3 (E.D. Pa. June 20, 2007) ("A party to the loan transaction is not subject to RESPA requirements for responding to a qualified written request unless that party actually received the qualified written request.").

In addition, this email does not provide Plaintiff's account number, and refers to Plaintiff by first name only.  Mot. to Dis. at 11, n.6.  Even if Mr. Permut were able to identify the Plaintiff's full name and account number from the information provided, the statute requires that the *servicer* of the account be able to do so.  See 12 U.S.C. § 2605(e)(1)(B)(i) (noting that a qualified written request "includes, or otherwise enables the servicer to identify, the name and account of the borrower").  An email omitting such crucial information as a last name and account number might not allow the Defendants to readily identify the borrower's account.  These requirements are rooted in sound policy, since a national lender like Countrywide can not be required to respond to voluminous written requests accurately and in compliance with RESPA timelines if borrowers do not make account identification readily ascertainable.

Further, the fact that the request was made electronically to a third party, only then to hopefully be passed on to the lender by unknown means, undermines the efficiency sought to be achieved by the provision's requirements, and violates the express requirement that such qualified requests be made in *writing*.  See generally  12 U.S.C. § 2605(e)(1) -(2).  For these reasons, the email sent did not constitute a qualified written request under the statute.

Plaintiff, however, contends that a second qualified written request was sent to the Defendants "on or about June 15, 2007," and that this request was never acknowledged.  Am. Compl. ¶¶ 86-87.  Plaintiff claims that this handwritten letter contained all of the information

12

required to constitute a qualified written request.  Pl.'s Resp. at 35 (Dkt. No. 18).  Accepting

Plaintiff's allegations as true, Plaintiff has established a RESPA violation, because the Defendants

received a written letter purportedly containing the information necessary to constitute a qualified

request, the letter was actually received by the Defendants (as they have admitted), and Defendants

did not respond within 20 days.  Defendants' contention that the second request claim should not be

permitted because it was raised only in the response papers and not  in the Complaint is without

merit, as the allegations regarding the second qualified written request were included in Plaintiff's

Amended Complaint at ¶86-87, and were merely augmented by Plaintiff's response.  Pl.'s Resp. at

35.  Therefore, the claim for a RESPA violation based on the June 15, 2007 letter is not dismissed.[7]

Plaintiff next claims that Defendants violated 12 U.S.C. § 2605(e)(3) by placing derogatory

information on Plaintiff's credit report within 60 days of receiving the qualified written request.

Because the only qualified written request was sent "on or about June 15, 2007," Defendants were

precluded from reporting any derogatory information regarding the Plaintiff's credit status for 60

days.  See 12 U.S.C. § 2605(e)(3).  The only instance when Plaintiff alleges that Defendants

reported derogatory information on her credit report occurred on May 4, 2007.  Pl.'s Resp. p. 35.

Because the first email did not constitute a qualified written request, any subsequent reporting can

not constitute a RESPA violation.[8]  Further, as Plaintiff has not alleged any instances of credit

---

[7] As previously noted, in deciding a motion to dismiss, the Court does not consider the affidavits of
the parties in determining the legal sufficiency of Plaintiff's claims.  Thus, although the Court notes
that Defendants, in the Leahey Affidavit, acknowledge receiving the purported request, but contend
the request was defective (an attachment illustrates it is missing most of the second line), such a
factual discrepancy is insufficient to warrant dismissal of the claim, and would be more properly
considered on a motion for summary judgment.

[8] The Court notes that it is also possible that the May 4, 2007 report was only an internal report
prepared for Defendants' sole use.  In that case, the reporting would fall outside the scope of

reporting occurring after the June written request, Plaintiff's claim under 12 U.S.C. § 2605 (e)(3) must be dismissed.

**E.     Claim VII: Breach of Fiduciary Duty**

Plaintiff claims the Defendants owed her a fiduciary duty in managing and servicing the escrow account, and that this duty was breached by providing inaccurate and misleading information.   A fiduciary is one "who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor . . . one who must exercise a high standard of care in managing another's money or property."  Black's Law Dictionary (8th ed. 2004).

It is well established that absent specific contractual language or circumstances to the contrary, the ordinary relationship between a creditor and debtor does not rise to the level of imposing a fiduciary duty upon the creditor.  See Bank Leumi Trust Co. v. Block 3102 Corp., 180 A.D.2d 588, 580 N.Y.S. 2d. 299 (1st Dep't 1992) ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower . . . ."); Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 (2d Cir. 1993);  Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 122 (2d Cir. 1984).  The New York Court of Appeals has also determined that absent specific language in a mortgage establishing a fiduciary obligation, a mortgagee owes no fiduciary duty to a mortgagor

---

RESPA, since 15 U.S.C. § 1681a(d)(2)(A)(i)-(ii)  excludes "report[s] containing information solely as to transactions or experiences between the consumer and the person making the report;" and  "(ii) communication of that information among persons related by common ownership or affiliated by corporate control . . . ."

with respect to the escrow account.  Surrey Strathmore Corp. v. Dollar Sav. Bank, 36 N.Y.2d 173

(1975); see also Bauer v. Mellon Mortgage Co., 178 Misc. 2d 234, 240-41 (Sup. Ct. N.Y. Cty.

1988) (dismissing a complaint because it failed to plead a special relationship between lender and

borrower "apart from the ordinary debtor/creditor relationship" and because the lender did not owe

the borrower a fiduciary duty with respect to an escrow account).

 Although the Second Department has previously found that a creditor has a fiduciary duty to

make escrow payments on behalf of a debtor, this is not the fiduciary duty that Plaintiff alleges was

breached in this case.  Davis v. Dime Savings Bank of New York, 158 A.D. 2d 50, 53, 557 N.Y.S.

2d 775, 776 (2d Dep't 1990) (finding duty when the debtor made monthly payments into an escrow

account and relied solely on the creditor to use these funds to pay property taxes, when the creditor

failed to pay the property taxes, resulting in foreclosure).  Rather, Plaintiff claims the Defendants

owed her a distinct fiduciary duty to provide accurate escrow information, and that *this* duty was

breached.

 However, Plaintiff provides no basis or support for this fiduciary duty to provide escrow

information, and the Court is unable to find any.  Plaintiff has not established that there was either

"a confidence reposed which invests the person trusted with an advantage in treating with the person

so confiding" (Manufacturers Hanover Trust v. Yanakas, 7 F.3d 310, 318 (2d Cir. 1993), motion to

vacate denied, 11 F.3d 381 (1993)) or an assumption of control and responsibility.  Gordon v.

Bialystoker Center & Bikur Cholim, 45 N.Y.2d 692, 412 N.Y.S.2d 593, 385 N.E.2d 285 (1978).

Plaintiff also does not sufficiently allege facts indicating that Countrywide's actions were designed

to instill a special relationship apart from the ordinary debtor/creditor relationship.

 The Note contains no provision establishing a fiduciary duty.  In contrast, the language of the

15

Note counsels against the finding of a fiduciary duty.   The Note states that Plaintiff will pay "all amounts necessary" for the Escrow Items, that her monthly payment "will be based upon Lender's estimate of the amount required," that Countrywide "may, at any time, collect and hold Escrow Funds in an amount sufficient to permit [it]to apply the Escrow Funds at the time specified under RESPA."  Mortgage Note §3(a) (Dkt. No. 17, Attach. 9).  The Note further states that "[i]f at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary" and that Plaintiff will then "pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due."  Mortgage Note §3(c).

Plaintiff, in effect, merely attempts to expand the very limited circumstances in which a fiduciary duty may be imposed.  Courts have consistently rejected this sort of attempt to impose a heightened obligation on all aspects of the debtor-creditor relationship simply because the mortgagee makes payments from an escrow account on behalf of the mortgagor.  See Surrey Strathmore Corp. v. Dollar Savings Bank, 36 N.Y.2d 173 (1975) (noting that absent specific language in the contract, no obligation existed on the part of the mortgagee to provide an accounting of the mortgagor's escrow account); see also Tierney v. Whitestone Sav. and Loan Ass'n, 83 Misc.2d 855 (N.Y. App. Term 1975) (finding, where plaintiff alleged breach of a fiduciary duty for failing to provide interest accrued from an escrow account, that no such duty was imposed "absen[t] either an express or implied provision").  Accordingly, the Court finds that Defendants did not owe Plaintiff a fiduciary duty to provide escrow information or more generally in managing and servicing the escrow account beyond the contractual requirements.  Thus, this claim must be dismissed.

**F.      Claim VIII: Breach of Contract**

Next, Plaintiff claims that Defendants breached the Mortgage Note by returning the April

payment of $1,411 and thereafter defaulting her on the Note.  This claim fails because Defendants

have not breached any of the provisions of the Note.

The Mortgage Note provides that Plaintiff agrees to pay Lender: "all amounts necessary to

pay for [the Escrow Items] . . . [t]he monthly payment [plaintiff] will make will be based upon

Lender's estimate of the amount required.  I will pay all of these amounts to Lender unless Lender

tells me, in writing, that I do not have to do so."  Mortgage Note §3(a) (Dkt. No. 17, Attach. 9).  In a

separate provision, the note reads, "[i]f [Plaintiff] do[es] not pay the full amount of each monthly

payment on the date it is due, [Plaintiff] will be in default."  Id. §6.

Plaintiff states that she received a statement for payment due April 1, 2007 in the amount of

$1,528, and admittedly underpaid this amount.  Am. Compl. ¶¶ 54, 59.  Under the express

provisions of the contract, Defendants were therefore within their rights to default her.  Plaintiff's

reliance on oral assertions and conflicting information regarding the specific date her escrow

account would be reassessed does not change the fact that the billing statement explicitly provided

an amount to be paid.  Plaintiff was obligated by contract to pay the amount contained on her bill,

not the purported amount allegedly displayed on a computer screen.  Her refusal to pay the amount

on the bill constitutes a breach of the contract.  Accordingly, Defendants' actions in defaulting

Plaintiff after she did not pay the billed amount did not constitute a breach of the Note.

Furthermore, the contract expressly specifies that any modifications to the billing statement

must be made in writing only. This, along with the applicable New York statute of frauds,[9] prevents

---

[9] N.Y. GEN. OBLIG. LAW § 5-703

Plaintiff from relying on oral assertions from unnamed home equity salesmen. As for the screen

shots showing a different amount, and the billing statements specifying that a re-analysis was not

due until April 2007, neither constitutes written authority from the corporation relieving Plaintiff of

her obligation to pay the amount stated in the bill. The contract makes it clear that the only

statement that matters is the bill of payment due. Plaintiff did not pay that amount, and a default

was triggered under the Mortgage Note. Accordingly, Defendants did not breach their duties and

obligations under the contract, and this claim is dismissed.

## G.      Claim IX: Breach of the Settlement Agreement

Plaintiff claims that the Defendants breached the confidential settlement agreement reached

in Gorham I by disclosing Plaintiff's new interest rate as set in that agreement. Plaintiff, however,

voluntary disclosed her current interest rate by attaching to the Complaint a statement indicating that

rate. Am. Compl., Attach. 2. This in itself is a breach of the settlement agreement, and constitutes a

waiver of any confidentiality rights relied upon by Plaintiff. As such, this claim is dismissed.

## H.      Claim X: Violation of General Business Law § 349

Plaintiff claims that the Defendants violated the provisions of NY General Business Law §

349 by participating in deceptive business acts and practices aimed at the general public. In order to

state a prima facie claim under this section, a plaintiff must demonstrate that "(1) the defendant's

deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the

plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)

(citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland, 85 N.Y.2d 20, 25 (1995)). In

Oswego, the New York Court of Appeals held that "the acts or practices [must] have a broader

impact on consumers at large," and that "[p]rivate contract disputes, unique to the parties . . . would

not fall within the ambit of the statute." <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland</u>, 85 N.Y.2d 20, 25 (1995).

In the present case, Plaintiff does not allege that the conduct undertaken by the Defendants was directed at the consumer public or consumers at large.  Rather, the crux of Plaintiff's Complaint alleges that the Defendants engaged in discriminatory and retaliatory conduct specifically directed at her in an attempt to recoup concessions made in the <u>Gorham I</u> settlement agreement.  Accordingly, the actions are not directed at the public, and do not fall within the contemplation of the statute. Therefore,  this claim is dismissed.

## I.    **Claim XI: Fraud**

Plaintiff claims that several actions taken by the Defendants constitute fraud, namely: (1) the email from Mr. Permut explaining the February re-analysis and subsequent increase; (2) phone calls from home equity salesmen who told Plaintiff her escrow amount had not, and would not increase until August 2007; and (3) the bills which stated that an escrow re-analysis would not be performed until April 2007.

In order to establish a prima facie claim of fraud under New York law, a plaintiff must show the existence of "'a material, false representation, and intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'"  <u>Turtur v. Rothschild Registry Int'l Inc.</u>, 26 F.3d 304, 310 (2d Cir.1994) (quoting <u>Katara v. D.E. Jones Commodities, Inc.</u>, 835 F.2d 966, 970-71 (2d Cir.1987)); <u>Small v. Lorillard Tobacco Co.</u>, 94 N.Y.2d 43, 57 (1999) (citing <u>Vermeer Owners Inc., v. Guterman</u>, 78 N.Y. 2d 1114, 1116 (1991) ("[t]he essential elements of a fraud claim under New York law include '(1) representation of material fact, (2) falsity, (3) scienter, (4) reliance and (5) injury.'").

19

Plaintiff has failed to plead facts sufficient to demonstrate a plausible claim of fraud against the Defendants.  Most notably, Plaintiff's claim fails because she has not demonstrated reasonable reliance on any of the alleged fraudulent misrepresentations.  Plaintiff was obligated to perform under the terms of the Note, which, as discussed above, specified that payment was due by the first of the month in the amount contained in the bill.  Absent any written notification relieving her of this obligation, Plaintiff cannot establish that she was reasonable in relying on collateral sources of information which may have contradicted the amount specified in the bill.  Considering that the interest at stake was Plaintiff's home, it is not reasonable to forgo payment due based on oral assertions of a payment amount contradicting the written bill without requiring adequate written assurances, as required by the Mortgage Note.  It was also not reasonable to rely on oral assertions made by salespersons at unidentified times without at least procuring the names and titles of the individuals providing the assurances, as Plaintiff here failed to do.  Moreover, Plaintiff never called Defendants to ascertain the correct amount due, relying only on unidentified individuals who called her at unidentified times for the unrelated purpose of offering to refinance her loan.

In addition, Plaintiff has failed to establish that the Defendants intended to defraud her, offering only conclusory allegations that Defendants' salespersons called to "steal her equity."  The practice of employing home equity salesmen to entice borrowers to refinance their homes does not in itself constitute an attempt to "steal equity," regardless of the prior litigation in this case, and does not demonstrate an intent to deceive on the part of the Defendants.

Accordingly, Plaintiff has failed to establish a prima facie claim of fraud, and the Court need not consider whether Plaintiff has sufficiently established the other elements of the claim, such as the existence of a duty distinct from the contractual one.  This claim is therefore dismissed.

**J.**     **Claim XII: Negligence**

Plaintiff claims that the Defendants were negligent in servicing her escrow account, and that their failure to employ reasonable care resulted in her default.

In order to state a prima facie claim for negligence, the plaintiff must demonstrate that the defendant "owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d 659, 667 (S.D.N.Y. 2000) (quoting King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997)).

A plaintiff may be able to establish the existence of a cognizable legal duty independent of the contractual duty.  See Islamic Bank v. Citibank, N.A., 126 F.Supp.2d 659, 667 (S.D.N.Y. 2000) (quoting Hargrave v. Oki Nursery  Inc., 636 F.2d 897, 899 (2d Cir.1980)) ("'it does not follow that because acts constitute a breach of contract they cannot also give rise to liability in tort.'").  Banks do owe a general duty of care to their customers to conduct business reasonably.  See King v. Crossland Savings Bank, 111 F. 3d 251, 259, n. 3 (2d Cir. 1997) (affirming the District Court's determination  that  "banks do in fact owe a duty of care to their customers . . ."); Bank Brussels Lambert, S.A. v. Intermetals Corporation, 779 F.Supp. 741, 747 (S.D.N.Y.1991) ("it is true without question that [a bank] ha[s] a duty to exercise reasonable skill and care in carrying out [its] activities for its customer . . .").

Nevertheless, Plaintiff has failed to meet all of the elements of her prima facie claim, because even assuming, *arguendo*, that Defendants breached their duty to use reasonable care and skill, Plaintiff has not demonstrated that the purported negligence was the proximate cause of the harm she sustained.

As discussed *supra*, in claim VIII, Plaintiff's Mortgage Contract makes clear that she is required to pay the amount specified on her billing statement every month unless she receives **written** notification from the Defendants stating otherwise.  Thus, this Court can not find that Defendants' actions proximately caused Plaintiff's default.  The April bill specified the amount that Plaintiff owed, and the Defendants did not relieve Plaintiff of her obligation to pay this amount.  Plaintiff's own decision to disregard the bill, rely on the assertions of unnamed salespeople, and not call Countrywide directly to verify her account status, cuts off the chain of liability for any alleged breach of duty.  Accordingly, this claim is dismissed.

### K.    Claim XIII: Gross Negligence

Plaintiff also claims that the Defendants were grossly negligent in managing and servicing the escrow account.  Gross negligence is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing."  American Tel. & Tel. Co. v. City of New York, 83 F. 3d 549, 566 (2d Cir. 1996) (quoting Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., 81 N.Y.2d 821, 823-24 (1993)).

In the present case, Defendants' actions do not rise to the level of intentional wrongdoing required to meet this heightened level of culpability, and the Court has already found that the Defendants were not the proximate cause of the harm suffered.  Therefore, this claim must also be dismissed.

### L.    Claim XIV: Conspiracy to defraud Plaintiff

Next, Plaintiff claims that the Defendants conspired with one another to defraud her.  To plead a valid cause of action for conspiracy, a plaintiff in New York must allege the primary tort and four elements: "(a) a corrupt agreement between two or more persons; (b) an overt act in furtherance

22

of the agreement; (c) the parties intentional participation in the furtherance of a plan or purpose; (4) the resulting damage or inquiry." <u>777388 Ontario Ltd v. Lencore Acoustics Corp</u>., 142 F. Supp. 2d 309, 319 (E.D.N.Y. 2001).

Since Plaintiff fails to state a claim for the underlying fraud alleged, this claim must also be dismissed.  Even assuming, *arguendo*, that the fraud claim was plausible, the conspiracy claim still fails as a matter of law, because Plaintiff has failed to allege any overt act or agreement between the Defendants in furtherance of the alleged fraud.  Mere conclusory allegations that a massive conspiracy occurred to steal the equity in Plaintiff's home does not suffice to survive the motion to dismiss absent any allegations of specific conduct evidencing this plot.  See <u>Abrahami v. UPC Const. Co.</u>, 176 A.D.2d 180, 574 N.Y.S.2d 52, 53 (1st Dep't 1991) (dismissing Plaintiff's conspiracy claim for failing to allege "fact[s] from which it could be inferred that [Defendants] had agreed or entered into an understanding with the other defendant . . . to cooperate in any fraudulent scheme.").  Therefore, this claim is dismissed.

**M.    Claim XV: Defamation of Credit**

Plaintiff's last claim alleges that the Defendants defamed her credit by reporting false and damaging information about her account to credit agencies.  Under the Consumer Credit Protection Act (CCPA), Plaintiff's claim fails because the CCPA requires a plaintiff to establish that (1) defendants furnished the credit information with "malice or willful intent," and (2) the information was false.  15 U.S.C. 1681h(e).[10]  Plaintiff has failed to establish either requirement of the statute.

---

[10]  15 U.S.C. s 1681h(e), titled "Limitation of liability" provides that:
"no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title . . . except as to false information furnished with malice or willful intent to injure such consumer."

Plaintiff's allegations that Defendants exhibited malice or willful intent are completely conclusory.  Plaintiff avers this malevolence has been demonstrated by the same allegations she previously made regarding the refinancing calls and the increase in her escrow.  However, the Defendants' calls to offer refinancing and the increase in Plaintiff's escrow do not establish the requisite malice or willful intent required to state a prima facie claim of defamation.[11]  Moreover, a defamation claim requires that the information at issue be false **,** and there is nothing in the Complaint that alleges the falsity of the information reported.  Even Plaintiff's personal belief that the escrow amounts billed to her were incorrect does not establish that her default was not true. Indeed, Plaintiff has admitted that she intentionally underpaid the bill, thereby triggering the default and demonstrating that any subsequent reporting of this default was true and accurate.  Therefore, this claim is dismissed.

## III.    Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 17) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Claims I, II, III, IV, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XV of Plaintiff's Amended Complaint (Dkt. No. 15) are **DISMISSED**; and it is further

_____

[11] The elements of a prima facie claim of defamation were established by the Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964).  They are: "(1) a *false* and defamatory statement of and concerning the plaintiffs uttered by the defendants; (2) publication of such statement to a third party; (3) fault on the part of the defendant; and (4) injury to the plaintiffs." Id. (emphasis added).

**ORDERED**, that Claim V (the RESPA claim) of Plaintiff's Amended Complaint (Dkt. No.

15), based on the letter sent "on or about June 15, 2007", may proceed; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.


DATED:   December 16, 2008
         Albany, New York



                                  Lawrence E. Kahn
                                  U.S. District Judge