**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KIM GORHAM-DIMAGGIO,

                                    Plaintiff,

         - v -                                          Civ. No. 1:08-CV-019
                                                              (LEK/RFT)

COUNTRYWIDE HOME LOANS, INC.,
COUNTRYWIDE HOME LOANS, INC., LP,
COUNTRYWIDE HOME LOANS SERVICING, LP,
COUNTRYWIDE FINANCIAL CORP., and
INVESTOR NUMBER 1688597323

                                    Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

OFFICE OF RICHARD L. DIMAGGIO            RICHARD L. DIMAGGIO, JR.,
*Attorney for Plaintiff*                 ESQ.
6 Berkley Road
Glenville, New York 12302

ZEICHNER, ELLMAN LAW FIRM               STEVEN S. RAND, ESQ.
*Attorney for Countrywide Defendants*
575 Lexington Avenue                    KENNETH C. RUDD, ESQ.
10TH Floor
New York, New York 10022

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION AND ORDER**

    Presently before this Court is Plaintiff's unconventional filing of a Motion to

Amend her First Amended Complaint, which has exponentially developed with the

passing of time.  After considerable debate, on March 26, 2009, Plaintiff filed a

Motion to Amend the First Amended Complaint, albeit in a wanting manner. Dkt. No.

53, Richard L. DiMaggio, Jr., Esq., Affirm., undated, & proposed Second. Am.

Compl.  The Defendants filed their opposition to Plaintiff's Motion.  Dkt. Nos. 55,

Defs.' Mem. of Law, dated Apr. 3, 2009, & 56, Kenneth C. Rudd, Esq., Decl., dated

Apr. 3, 2009.  Then, on April 16, 2009, without permission and in contravention of

a Court order, Plaintiff filed another purported Attorney's Affirmation, which

technically could be construed as a Reply Affirmation.[1]  Dkt. No. 57, Richard. L.

DiMaggio, Jr., Esq., Affirm., undated.[2]  Due to this Reply Affirmation, other pleading

---

[1] Prior to the filing of this Motion, the Court issued the following Order to provide guidance
as to how the Motion should be presented:

> (1) the plaintiff shall serve and file a motion to amend on or before 3/27/09.  The
> motion to amend shall have a notice of motion, memorandum of law, and proposed
> amended pleading that complies with this District's L.R. 7.1(a)(4).  The notice of
> motion shall make reference to this Order and that the parties have conferred with
> the magistrate judge; (2) Defendants shall serve and file their opposition to plaintiff's
> motion to amend on or before 4/3/09; (3) **neither party may make reference to
> previous filings such as Dkt. Nos. 36-44 and 47-49, and there will be no reply or
> sur-reply pleadings**; and (4) the motion shall be on submit, oral argument will not
> be permitted unless requested by the Court, and a courtesy hard copy of all
> submissions shall be provided to Chambers.

Dkt. No. 50, Order, dated Mar. 20, 2009 (emphasis added).

First, Plaintiff filed neither a notice of motion nor a memorandum of law as directed.
Second, the Court proscribed the filing of a reply or sur-reply pleading.  Nonetheless, Plaintiff
ignored the Court's prohibition and filed a Reply Affirmation.  As will be established further, this
is indicative of the unconventional pattern and practice exhibited by Plaintiff's Counsel.

[2] Plaintiff's Affirmations in support of her Motion to Amend and as a Reply to Defendants'
Opposition are deficient as sworn statements.  In addition to not being dated, neither Affirmation
is sworn to as true under the penalties of perjury.  *See* 28 U.S.C. § 1746.  The Court agrees with

(continued...)

anomalies, and an evolution of other issues, yet another series of memoranda related to Plaintiff's efforts to amend her First Amended Complaint were spawned. These memoranda will also be considered by this Court and discussed more fully below. *See* Dkt. Nos. 59, 60, 63, 71, 77, 78, and 80.

# I. HISTORY

## A.  First Amended Complaint and Motion to Dismiss

In order to place this Motion to Amend in perspective, the Court must harken back to the First Amended Complaint, Dkt. No. 15, and the ensuing Motion to Dismiss, Dkt. No. 17. The First Amended Complaint spanned fifty-three (53) pages, 304 paragraphs, and pled fourteen causes of action. Dkt. No. 15, First Am. Compl., dated Mar. 7, 2008. Among others, Plaintiff alleged both statutory and common law causes of action including allegations of violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 *et seq*., the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 691, the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq*., the deprivation of civil rights, discrimination, breach of fiduciary duty, negligence, and

---

[2](...continued)

Defendants that these two filings are not Affirmations as contemplated by the law. Dkt. No. 59, Defs.' Lt.-Br., dated Apr. 23, 2009. Closer scrutiny of these two documents reveals that, in most part, they are riddled with arguments rather than a recitation of relevant facts, which is the essential purpose of affidavits and affirmations. In the scheme of things, however, these documents may better serve as quasi-memoranda of law, although visibly absent are case precedents. *See supra* note 1. Therefore, although it would be within the Court's providence to strike both of these documents, the Court will, nonetheless, consider them for the limited purpose of positing arguments in support of the Motion. To the extent facts are recited, they will not be considered.

a breach of contract.  First Am. Compl.  On April 7, 2008, Defendants moved to dismiss the Amended Complaint.  Dkt. No. 17.  The Honorable Lawrence E. Kahn, Senior United States District Judge granted in part and denied in part Defendants' Motion to Dismiss. Counts I, II, IV-XIV were dismissed.  Dkt. No. 21, Mem.-Dec. & Order, dated Dec. 17, 2008.  As will be explained further, which is also pertinent to this Motion to Amend, Judge Kahn allowed the position stated in Count III that pertains solely to a June 15, 2007 letter, which he accepted as a "qualified written request," to survive the Motion to Dismiss.[3]  *Id*. at pp. 12-13 (RESPA acknowledgment claim).

Plaintiff pled that on June 15, 2007, she sent a written request, entitled here as "the second qualified written request," to Defendants "disputing the escrow . . .[and seeking] an accounting of [her] escrow."  First Am. Compl. at ¶¶ 86-94 & Ex. K.[4]  By this litigation, Plaintiff is disputing an escrow deficiency of $1,411.  *Id*. at ¶¶ 91-93.

---

[3] This Memorandum-Decision and Order and the related case docket identify Counts III and XV as being dismissed.  There was no Count XV and Count III is the RESPA claim.  When Defendants sought clarification, Dkt. No. 24, Judge Kahn explained that instead of relying upon Plaintiff's numbering system he divided Plaintiff's Amended Complaint into fifteen (15) claims and split Count III (RESPA) into Claims V (failure to properly respond to a qualified written request within 20 days) and Claim VI (placing derogatory information on Plaintiff's credit report).  Dkt. No. 25, Order, dated Jan. 14, 2009.

[4] As will become evident later in our discussion, the text and the materiality of June 15, 2007 Letter ( Ex. K) is very much in controversy.  Part of the text of the Letter is illegible possibly because it has been copied incorrectly.  The original apparently no longer exists and the reason for the missing text and who may have created the errant copy remains in dispute.

Judge Kahn was confronted with the issue as to whether Plaintiff had triggered Defendants' duties under RESPA by forwarding to them a qualified written request, pursuant to 12 U.S.C. § 2605(e)(1)(A) & (B). Dkt. No. 21 at pp. 10-13. In addressing this issue, as it relates to the June 15, 2007 Letter, Judge Kahn wrote,

> Plaintiff, however, contends that a second qualified written request was sent to the Defendants "on or about June 15, 2007," and that this request was never acknowledged. Am. Compl. ¶¶ 86-87. Plaintiff claims that this handwritten letter contained all of the information required to constitute a qualified written request. Pl.'s Resp. at 35 (Dkt. No. 18). Accepting Plaintiff's allegations as true, Plaintiff has established a RESPA violation, because the Defendants received a written letter purportedly containing the information necessary to constitute a qualified request, the letter was actually received by the Defendants (as they have admitted), and Defendants did not respond within 20 days. Defendants' contention that the second request claim should not be permitted because it was raised only in the response papers and not in the Complaint is without merit, as the allegations regarding the second qualified written request were included in Plaintiff's Amended Complaint at ¶86-87, and were merely augmented by Plaintiff's response. Pl.'s Resp. at 35. Therefore, the claim for a RESPA violation based on the June 15, 2007 letter is not dismissed.

*Id*. at pp. 12-13.

Critical for our discussion herein, Judge Kahn continued his analysis of Plaintiff's other RESPA claim under 12 U.S.C. § 2605(e)(3), the alleged placement of derogatory information on Plaintiff's credit report within 60 days after receiving the purported qualified written request. Judge Kahn found that "the only instance when Plaintiff alleges that Defendants reported derogatory information on her credit report occurred on May 24, 2007 . . . . Because the first email did not constitute a qualified

written request, any subsequent report can not constitute a RESPA violation. Further, as Plaintiff has not alleged any instances of credit reporting occurring after the June written request, Plaintiff's claim under 12 U.S.C. § 2605(e)(3) must be dismissed." *Id*. at pp. 13-14.

If there was any confusion as to what cause of action survived the Motion to Dismiss, Judge Kahn reiterated "that the only claim remaining in the case is that portion of Claim V ([RESPA] failure to timely respond) which is based on the letter sent 'on or about June 15, 2007,' as contained in Count III of the Amended Complaint." Dkt. No. 25, Order, dated Jan. 14, 2009, at p. 3.

Equally pivotal to our Motion to Amend is Judge Kahn's discussion regarding Plaintiff's Count XI, negligence. First Am. Compl. at ¶¶ 274-280. Judge Kahn rightfully observed that this claim alleges that "Defendants were negligent in servicing [Plaintiff's] escrow account, and that [Defendants'] failure to employ reasonable care resulted in her default." Dkt. No. 21 at p. 21. In dismissing this Count, Judge Kahn ruled that Plaintiff could not establish a *prima facie* claim because she had not demonstrated that the breach of duty was the proximate cause of any harm she may have sustained. Namely, Defendants' action did not relieve Plaintiff of her obligation to pay the amount set forth in the April 2007 billing statement. *Id*. at pp. 21-22.

*-6-*

## II.  LAW

### A.  Motion to Amend Standard

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).  District courts are vested with broad discretion to grant a party leave to amend the pleadings. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).  "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." *New York v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997) (citing *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)); *see also Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (citations omitted).  This requires the non-movant to "do more than simply claim to be prejudiced." *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185 (E.D. Pa. 1991).  However, the court has the discretion to deny a motion to amend

especially on the grounds of futility.  *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir.

2001); *see also Marchi v. BOCES of Albany*, 173 F.3d 469, 478 (2d Cir. 1999) (citing

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)); *Health-Chem*

*Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).[5]  The Second Circuit has stated

where futility is raised as an objection to the motion to amend, and

> [w]here it appears that granting leave to amend is unlikely to be
> productive,  it is not an abuse of discretion to deny leave to amend. *See,*
> *e.g.*, *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230 (denial not abuse
> of discretion where amendment would be futile); *Health-Chem Corp. v.*
> *Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("where . . . there is no merit in
> the proposed amendments, leave to amend should be denied"); *Billard*
> *v. Rockwell International Corp.*, 683 F.2d 51, 57 (2d Cir.1982) (denial
> not abuse of discretion where plaintiff had had "access to full discovery"
> in a related case).

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d at 131.

As futility is an appropriate basis for denying leave to amend, such denial

should be contemplated within the standards necessary to withstand a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Dougherty v. Town of North Hempstead*

*Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C.*

*Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

---

[5]  The Second Circuit has stated that the district court does not abuse its discretion, as long as there is good cause, when they deny leave to amend pleadings on the basis of futility, bad faith, undue delay or undue prejudice.  *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101-02 (2d Cir. 2002) (denying leave to amend when motion was initiated four years after original complaint and when more than three years had passed since the close of discovery); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

### B.  Motion to Dismiss Standard

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  "Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice."  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).  On a motion to dismiss, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963).

Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.*; *see also Wheeldin v. Wheeler*, 373 U.S. 647, 648 (1963) (inferring facts from allegations of complaint).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007).[6] The Court of Appeals for the Second Circuit has recently interpreted the foregoing language as requiring that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims. *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.) (emphasis in original), *rev'd on other grounds, Aschroft v. Iqbal*, _U.S._, 129 S.Ct. 1937, 1949 (2009) ("The plausibility standard is not akin to a 'probably requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the

---

[6] By its opinion in *Bell Atlantic*, the Supreme Court recently abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968 (2007) (quoting *Conley*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 1969.

[plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

## III. DISCUSSION

To put this Motion in perspective, it is incumbent upon the Court to recite the procedural record and the discordance and confusion that resulted from this piecemeal filing.  As the Court observed above, the issues related to the Motion to Amend have profligated dramatically from our initial discussion on amending the Complaint. During the Rule 16 Conference, Plaintiff raised that she needed to once again amend her Complaint in order to add a line regarding damages.  At that time, no other prospective amendment was discussed, thus the request appeared to be basic and presumably agreeable.  Based upon those assumptions, the Court devised a simple mechanism whereby this modest amendment could be reviewed and possibly approved by Defendants without the need for a motion practice.  Dkt. No. 29, Text Order, dated Feb. 18, 2009.  What was considered to be a simple pleading chore essentially developed into a broader production.  Plaintiff assured the Court that the proposed amendments were being added only to enhance allegations to Count III of the First Amended Complaint insofar as Plaintiff's credit was damaged after the

*-11-*

dissemination of June 15, 2007 Letter.  Rather than hewing to this elementary representation, Plaintiff propounded a proposed amended complaint which recited verbatim the relevant statutes and waxed extensively and conclusorily on the inferences and implications of certain events.  Dkt. No. 32, Pl.'s Lt.-Mot., dated Mar. 3, 2009.[7]  On March 3, 2009, after reviewing the proposed amended pleading, Defendants enumerated the reasons why they could not consent to the proposed amended complaint, primarily because Plaintiff unnecessarily, and maybe improperly, repeated each and every fact and allegation that existed in the First Amended Complaint that had been dismissed by Judge Kahn.  Dkt. No. 36, Defs.' Lt.-Br., dated Mar. 3, 2009.

Concurrently, the parties presented to the Court a host of discovery disagreements.  *See* Dkt. Nos. 37-40, & 42-44.  In order to address both the discovery and motion to amend issues, the Court held a telephone conference, on the record, on March 17, 2009.  Among other matters, a discussion ensued about Plaintiff's proposal to replead each and every fact and allegation that had been earlier dismissed.  Still suffering under the notion that only the proposed amendments to be added were correspondent to damages, this Court advised the parties, particularly Plaintiff, that

---

[7] Initially, this filing appeared to be a motion to amend, which was not yet sanctioned.  Since the Court did not give Plaintiff permission to file a motion to amend at that time but only to present it to Defendants to see if they would stipulate to the added content, the Court denied the request. Dkt. No. 34, Text Order, dated Mar. 3, 2009.

dismissed claims "should not be repled . . . and [do not] need to [be] replead[.]"  Dkt. 56, Ex. D, Tel. Conf. Tr., dated Mar. 17, 2009, at p. 7.  Because the parties could not agree on the proposed amended complaint, the Court set dates for the filing and opposing of the motion and the briefing methodology.  Dkt. Nos. 46 & 50; *see also supra note* 1.

On March 26, 2009, the Motion to Amend and the proposed Second Amended Complaint were filed.  Dkt. No. 53.  Rather than proposing one amended Count, as anticipated, we find that Plaintiff is now alleging three additional causes of action: (Count XV, ¶¶ 305-320) - reporting derogatory information on Plaintiff's Credit Report within 60 days after the June 15, 2007 Letter; (Count XVI, ¶¶ 321-330) - failure to investigate and provide requested information; and, (Count XVII, ¶¶ 331-353) - negligent servicing in violation of 24 C.F.R. § 3500.17.  *See* Dkt. No. 67, Pl.'s Lt.-Br., dated Apr. 29, 2009 (wherein, at the request of the Court, Plaintiff clarifies that indeed there are three newly proposed causes of action).  Further, in contravention of the Court's directives, Plaintiff repeats verbatim her entire First Amended Complaint, which repetition includes all of the fourteen (14) Counts previously dismissed by Judge Kahn.

Lastly, subsequent to the Motion to Amend being filed, Plaintiff indicated she wanted to interpose another amendment by adding the Bank of America as a party.

Dkt. No. 66, Pl.'s Lt.-Mot., dated Apr. 28, 2009.  Defendants oppose this application as well.  Dkt. No. 71, Defs.' Lt.-Br., dated Apr. 30, 2009.  In order to address this new development, the Court held a telephone conference, on the record, on May 1, 2009.  Pursuant to these filings and the telephone conference, the Court now knows that Defendants, the Countrywide family of businesses, have recently become subsidiaries of Bank of America.  Additionally, Countrywide Home Loans Servicing LP changed its name to BAC Home Loans Servicing, LP.  *Id.* at p. 1.  Defendants do not object to amending this case's caption to state BAC Home Loans Servicing LP f/k/a Countrywide Loans Servicing LP.  *Id.* at p. 2.

Prior to the telephone conference and the above mentioned filings, Defendants repeatedly stated to Plaintiff and the Court that Countrywide Home Loans Servicing LP was the only servicer of Plaintiff's mortgage loan.  Their position has not wavered and they argue, given the substance of Plaintiff's remaining claim and proposed amendments, that Countrywide Home Loans Servicing LP is the only proper Defendant.  *Id.* at p. 1.  Nonetheless, the Court granted Plaintiff an opportunity to research and reflect upon these revelations and advise the Court as to whether she wishes to pursue Bank of America as a party.  Dkt. No. 74, Text Order, dated May 4, 2009.  Apparently after conducting her research, Plaintiff still desires to add Bank of America as a party even though Bank of America did not, and has not, service her

loan.  Dkt. No. 78, Pl.'s Lt.-Mot, dated May 14, 2009.  Referring to Countrywide's website, Plaintiff maintains that Bank of America has assumed liability and responsibility for the servicing of home loans, which, of course, would include hers. *Id*. at p. 1.  In opposing joining Bank of America as a party, Defendants reiterate that "[t]he sole servicer of plaintiff's mortgage is defendant BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing, LP, and no other entity could be liable for the alleged failure to respond to a qualified written request."  Dkt. No. 80, Defs.' Lt.-Br., dated May 19, 2009, at pp. 1-2.[8]

The Court will discuss all of these transitional developments as one comprehensive Motion to Amend.[9]

## A.  Repleading Previously Dismissed Counts

Ignoring the Court's insistence that she should not do so, Plaintiff realleges each and every fact and allegation previously dismissed by Judge Kahn.  All Counts

---

[8] Defendants also note that there is no such entity entitled Bank of America and the various Countrywide Defendants have different subsidiary relationships with Bank of America Corporation. Dkt. No. 80 at p. 1, n.1.

[9] Another perplexing and confounding circumstance has occurred which the Court must address.  There is uncertainty as to whether Plaintiff may be seeking to add yet another cause of action.  Recently, Plaintiff exclaimed volubly that Defendants entered into a pattern of "altering" and "doctoring" documents, particularly the June 15, 2007 Letter. *See* Dkt. No. 57.  The ambiguous manner in which Plaintiff presented this issue makes it difficult for the Court to determine whether she is actively pursuing an additional cause of action based upon spoliation or is just challenging one of Defendants' legal assertions concerning the June 15, 2007 Letter.  Nonetheless, without a specific request, the Court determines that Plaintiff is not seeking a spoliation cause of action.

were denied with the exception of the failure to respond claim related to the June 15, 2007 Letter, which may be found in paragraphs 86-87 of the First Amended Complaint.

Plaintiff's motivation for insisting upon repeating the entire content of her First Amended Complaint is nebulous indeed.   Plaintiff announces that "this case will be appealed . . .[] [a]nd reconsidered," and then proffers the preposterous position that she "must replead dismiss[ed] claims or refer to them to provide a basis for reconsideration after Discovery, or appeal." Dkt. No. 57 at ¶¶ 15 & 41.  The Court is befuddled as to what will be appealed, reconsidered, and when.  The Court wonders whether she is referring to the Memorandum-Decision and Order, dated December 17, 2008, or is anticipating appealing this Memorandum-Decision and Order.  In any event, Plaintiff's reasoning for this comprehensive repleading has no basis in law.

The Second Circuit, in joining other circuits, made it crystalline clear that a party, when amending a complaint, need not replead a dismissed claim in order to preserve the right of appeal. *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 216-17 (S.D.N.Y. 2006) ("[T]here is no need for plaintiffs to maintain the allegations in the complaint in order to preserve their rights on appeal."); *In re AOL Time Warner, Inc.*, 2004 WL 1810661, at *3 (S.D.N.Y. Aug. 12, 2004) (quoting *P. Stolz* for the proposition that "we will not

require a party . . . to replead a dismissed claim in order to preserve the right to appeal"). "Such a formalistic requirement serves no valid purpose," *P. Stolz*, 355 F.3d at 96, and the concern to replead dismissed claims out of an abundance of caution so as to preserve these claims on appeal is "unwarranted," *Tierney v. Omnicom Group, Inc.*, 2007 WL 4526615, at *5 (S.D.N.Y. Dec. 20, 2007).

This clearly established law was previously shared with Plaintiff, which apparently she decided to ignore. We agree with Defendants that, for the most part, this full-length recitation of the First Amended Complaint is fundamentally irrelevant. Neither an appeal to the Second Circuit nor a motion for reconsideration would be lost if the repleaded paragraphs were absent from this proposed Second Amended Complaint. Hence, the Court will not allow the portion of the proposed amended pleading comprised of repled allegations, and yet for purposes of continuity we would allow her to recite those paragraphs that identify the relevant parties, the details concerning the June 15, 2007 Letter request, the alleged failure to acknowledge receipt of the Letter, and allegations of actual damages. *See* Second Am. Compl. at ¶¶ 1, 18-24, 86, 87, & 207.

## B.  Count XV - Reporting Derogatory Information on Plaintiff's Credit Report

In this proposed claim, Plaintiff alleges that in June 2007, she sent a qualified

written request to Defendants demanding, among other things, an accounting of her mortgage escrow.  She further alleges that Defendants are barred from reporting derogatory credit information on Plaintiff's credit report for sixty days, but nevertheless placed missed payment information and other derogatory information on her credit report.  *See* proposed Second Am. Compl. at ¶¶ 305-320.  She opines that "Defendants at some point reported the mortgage payments 'in dispute.'" *Id.* at ¶ 318.  Defendants assert that Plaintiff cannot state a cause of action and thus this amendment is futile.

Defendants' first challenge to this cause of action revolves around whether the June 15, 2007 Letter constitutes a qualified written request pursuant to 12 U.S.C. § 2605(e)(1)(B).  A qualified written request

> shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.*

However, this challenge lacks merit inasmuch as Judge Kahn addressed this very document and claim in the December 17, 2008 Memorandum-Decision and Order. Weighing Plaintiff's contention that she forwarded, on or about June 15, 2007, a request that contained all of the information required to constitute a qualified written

request, and accepting Plaintiff's allegation as true, Judge Kahn found that she had stated a RESPA violation.  By making such a finding, Judge Kahn, at least at this juncture, accepted the allegation that the Letter is a qualified written request.

By the same token, however, Judge Kahn's MDO portends similar repercussions pertaining to the other elements of a RESPA violation (protection of the credit rating) that allege the reporting of derogatory information.   12 U.S.C. § 2605(e)(3) states:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, **a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).**

(emphasis added).

Prior to this Motion, inquiries were made during the telephone conferences as to what additional reporting was made by Defendants after June 2007; none was provided. Considering the importance of this factual development in order to plead a § 2605(e)(3) violation, expectations would be that such additional derogatory reported information would have been revealed in Plaintiff's proposed Second Amended Complaint.  A pleader is obligated to amplify a claim with factual allegations to render the claim plausible and remove it from the realm of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)  Rather,

Plaintiff resorted to the conclusory statement that "[a]fter the June request for an explanation of her escrow and an accounting, Defendants provided information regarding an overdue payment to the consumer reporting agency."  Second Am. Compl. at ¶ 315.  In essence, without more, Plaintiff has reiterated an allegation and a cause of action that has already been found inadequate by Judge Kahn.

So that this point is no longer misunderstood by Plaintiff, we repeat Judge Kahn's findings on this critical element in § 2605(e)(3).  Regarding the reporting of derogatory information to a consumer agency allegations, Judge Kahn wrote:

> Because the only qualified written request was sent "on or about June 15, 2007, Defendants were precluded from reporting any derogatory information regarding the Plaintiff's credit status for 60 days.  See 12 U.S.C. § 2605(e)(3).  The only instance when Plaintiff alleges that Defendants reported derogatory information on her credit report occurred on May 4, 2007. [Dkt. No.18], Pl.'s Resp., [dated May 6, 2008], p. 35. Because the first email did not constitute a qualified written request, any subsequent reporting can not constitute a RESPA violation.  Further, as Plaintiff has not alleged any instances of reporting occurring after the June written request, Plaintiff's claims under 12 U.S.C. § 2605(e)(3) must be dismissed.

Dkt. No. 21 at pp. 13-14.[10]

Without a reporting after June 15, 2007, exclusive of the reporting which was commenced on May 4, 2007, Plaintiff has failed to plead an essential element for this cause of action.  The Court is bound to follow Judge Kahn's Ruling as to this

---

[10]  When identifying the purported illegal reporting date, Plaintiff stated that it occurred "from May 4 on . . . ."  Dkt. No. 18 at p. 35.

element.[11]  On this ground proposed Claim XV is futile.

Moreover, by alleging a breach of RESPA duties alone without alleging actual damages and the proximate cause of the breach of duty to those damages, Plaintiff fails to state a RESPA claim.  *Hutchinson v. Delaware Sav. Bank, FSB*, 410 F. Supp. 2d 374, 382 (D.N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A)); *see also Jones v. Select Portfolio Serv., Inc.*, 2008 WL 1820935, at *9-10 (E.D. Pa. Apr. 22, 2008) (complaint fails to properly plead causation and specific damages to support the RESPA claim); *Katz v. Dime Sav. Bank, FSB*, 992 F. Supp. 250, 255-57 (W.D.N.Y. 1997) (granting summary judgment for plaintiff's failure to show actual pecuniary harm).  In *Hutchinson*, the court found that plaintiffs' allegation that the negative credit report caused them to lose the ability to obtain and borrow another mortgage loan and other financing was sufficient to state a RESPA claim.  410 F. Supp. 2d at 382-83.  Here,

---

[11] The law of the case doctrine is a seminal principle of law.  Essentially, under this doctrine, any decision made on an issue of law made at one stage of a case becomes a binding precedent to be followed throughout the litigation.  "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *In re PCH Assoc*, 949 F.2d 585, 592 (2d Cir. 1991) (citations omitted).  "While the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties."  *Id.* (citations omitted).

The underlying considerations for this doctrine are obvious: to maintain fairness to the parties; to maintain consistency throughout the litigation; to avoid reconsideration of matters once decided during the course of the litigation; and to promote judicial economy and societal interest in finality.  *Prisco v. A & D Cartin Corp.*, 168 F.3d 593 (2d Cir. 1999); *Soto-Lopez v. NYC Civil Serv. Comm'n*, 840 F.2d 162 (2d Cir. 1998) (a litigant should not be allowed to disregard this doctrine to prejudice the party seeking the benefit of the doctrine); *see also County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997).

all Plaintiff provided was that she "was damaged."  Second Am. Compl. at ¶ 319. This mere mention of being damaged does not suffice for alleging that specific damages were suffered by Plaintiff as the result of the June 15, 2007 Letter. Accordingly, for this reason as well, proposed Count XV is deemed futile.[12]

### C. Count XVI - Failure to Investigate and Provide Requested Information

In a rather prolix manner, Plaintiff alleges that Defendants breached their duty under § 2605(e)(2)(C) by failing to investigate and provide Plaintiff with an explanation or her escrow statement within sixty days of June 15, 2007.  Second Am. Compl. at ¶¶ 321-330 (Count XVI).  Succinctly, the statute requires the loan services to investigate and provide a written explanation that includes "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer[.]"  12 U.S.C. § 2605(e)(2)(C)(i).

A violation of Defendants' statutory duty alone does not state a REPSA claim. *Hutchinson v. Delaware Sav. Bank. FSB*, 410 F. Supp. 2d at 382; 12 U.S.C. § 2605(f)(1).  Without an allegation of actual pecuniary damages and proximate cause, Plaintiff fails to state a claim upon which relief can be granted.  *Cardiello v. The*

---

[12] Rather than state causes of action separately, Plaintiff also pleads in proposed Count XV that Defendants failed to comply with their duty to respond to the "qualified written request." Second Am. Compl. at ¶¶ 311 & 314.  To the extent that Judge Kahn already ruled that Claim V, the exact same allegation, may proceed, the allegations in proposed Count XV are unnecessary iterations and are found to be futile as well.

*Money Store, Inc.*, 2001 WL 604007, at *7-8 (S.D.N.Y. June 1, 2001) ("If a defendant fails to respond to a qualified inquiry in the manner prescribed by RESPA § 2605, he may be liable for plaintiffs' actual damages[.]").  Similar to proposed Count XV, Plaintiff neglected to state her actual damages, if any, and the proximate cause to the alleged breach.  All that has been presented is a mere demand for damages.  Since a mere demand for damages is not sufficient, accordingly, proposed Count XVI is deemed futile.

### D.  Count XVII - Negligent Servicing

The proposed Count XVII is framed as negligent servicing of her escrow account.  Second Am. Compl. at ¶¶ 331-353.[13]  This is not the  first time Plaintiff has pled negligent servicing of her account.  *See* Second Am. Compl. at ¶¶ 274-289 (repeating Counts XI, negligence & XII, gross negligence ).  In definitive fashion, Judge Kahn dismissed the negligence claims inasmuch as Plaintiff failed to "demonstrate[] that the purported negligence was the proximate cause of the harm she sustained." Dkt. No. 21 at pp. 21-22.  As Judge Kahn found, Plaintiff was obligated

---

[13]  Here is yet another example of a pleading anomaly.  The proposed Second Amended Complaint reflected on the case docket does not plead a proposed Count XVII (¶¶ 331-353).  That proposed Second Amended Complaint concludes with Count XVI and paragraph 324. Dkt. No. 53.  To assist us, the Court directed the parties to provide courtesy hard copies of the motion and all related pleadings.  The courtesy hard copy of the proposed Second Amended Complaint forwarded by Plaintiff includes this proposed Count XVII.  Notwithstanding this pleading glitch, Defendants were able to respond to the proposal. *See* Dkt. No. 77.  To the extent it deserves mentioning, this Memorandum-Decision and Order is based upon the courtesy hard copy provided by Plaintiff.

to pay the amount specified on her billing statement unless Defendants relieved her of that responsibility. *Id.* at p. 22. Judge Kahn also found that the April 2007 Mortgage Bill specified the amount that Plaintiff owed, but she decided to disregard the bill and reply upon others as to the amount she should pay. *Id.* Accordingly, Judge Kahn did not find that Defendants' action proximately caused Plaintiff's default on her mortgage payment. *Id.* The only difference between what was previously pled and considered by Judge Kahn and what is now being profferd is that Plaintiff resorts to pleading that Defendants failed to comply with 24 C.F.R. § 3500.17,[14] and that such failure is actionable. The Court concurs with Defendants that reliance upon these rules and regulations is misplaced.

Section 3500.17 sets forth the regulatory scheme for the management of escrow accounts by a lender. In terms of any shortcomings or omissions in complying with these rules and regulations, only the Secretary of Housing and Urban Development has the authority to assess penalties, 24 C.F.R. § 3500.17(m) & (n),[15] thus, there is no private cause of action, *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 591

---

[14] Under the authority conferred by statute, the Secretary of Housing and Urban Development prescribed rules and regulations that regulate the servicing of mortgage loans and escrow accounts. 12 U.S.C. § 2617.

[15] These rules and regulations must be read in conjunction with its underlying statute, 12 U.S.C. § 2609(c) & (d). Section 2609(d) states in part that "the Secretary shall assess to the lender or escrow servicer failing to submit the statement a civil penalty of $50 for each such failure, but the total amount imposed . . . may not exceed $100,000." Under the rules and regulations, the civil penalty is $75 with a total assessed penalty not to exceed $130,000. 24 C.F.R. § 3500.17(m).

(E.D.N.Y. 2005) (citing *State of La. v. Litton Mortgage Co.*, 50 F.3d 1298, 1301 (5th Cir. 1995).[16]   Calling upon § 3500.17 to supply a claim sounding in negligent servicing is nothing more than a retooling of those Counts (VI, VII, XI and XII) previously dismissed by Judge Kahn.  Dkt. No. 21 at pp. 14-22.[17]

---

[16]  The Court acknowledges that there is a debate over whether 12 U.S.C. § 2609(d) provides a private cause of action.  *See Heller v. First Town Mortgage Corp.*, 1998 WL 614197, at *2 (S.D.N.Y. Sept. 14, 1998) (finds a private cause of action).  After reviewing the precedents and weighing the matter, this Court finds that *McAnaney* was decided correctly. *See also Allison v. Liberty Sav.*, 695 F.2d 1086 (7th Cir. 1982); *Clayton v. Raleigh Fed. Sav. Bank*, 107 F.3d 865 (4th Cir. 1997) (unpublished opinion); *Deboer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995) (noting the split in the circuits but also finding based upon the number of district courts that found no private cause of action, there was a strong unlikelihood of success as a private right of action).

[17]  The Court is compelled to discuss very briefly Plaintiff's illogical supposition that by under charging her escrow account, she was damaged.  As we know from reviewing these rules and regulations, the Secretary established a regulatory scheme to manage mortgage escrow accounts. 12 U.S.C. § 2609.  In determining the amount to be set in the escrow, the rules and regulations direct the mortgage lender to conduct an escrow account analysis based upon the previous completed escrow year and also employing an applicable cushion.  This is an estimated amount. 24 C.F.R. § 3500.17(c)(3) & (7).  Then the mortgage lender may make adjustments to the account depending on whether a surplus or shortage exists.  If there is a shortage, the servicer may require the borrower to repay the shortage amount within 30 days.  *Id*. at § 3500.17(f)(3).  Nonetheless, the borrower is still obligated for the entire amount of the taxes due.  Here, per Plaintiff, the previous school tax bill was $2,466.75.  For the tax school year in question, Countrywide established the tax escrow as $2,256.  However, the actual school taxes were increased to $2,802.99.  At the end of the escrow period, the escrow account had a shortage of $546.00, which under this regulatory scheme Plaintiff is still obligated to pay.  Plaintiff seems to argue that most of her financial woes were caused by this underestimation of her school taxes.  *See* Second Am. Compl. at ¶¶ 340-345; Dkt. No. 67, Pl.'s Lt.-Br., dated Apr. 29, 2009.  First, if these rules and regulations provided a private cause of action, which it does not, any discrepancy in the estimated amount is clearly resolved by the provisions in 24 C.F.R. § 3500.17(f), which obviously Defendants followed.  Second, this allegation that the monthly mortgage billing statements were improperly uncharged causing a deficiency is internally inconsistent with Plaintiff's central theme of her action that her escrow account was being improvidently overcharged.  *See generally* Second Am. Compl.  The Court agrees with Defendants that under this underpayment scenario, had Defendants not made the adjustment for the error as permitted by these rules and regulations, Defendants, and not the Plaintiff, would have been harmed. Dkt. No. 77, Pl.'s Mem. of Law at pp. 7-9.

### E.  Bank of America as a Necessary Party

While the parties were briefing the issues related to the proposed Second Amended Complaint, Plaintiff interjected yet another issue into the mix.  She now argues, though it is not imbedded into the proposed Second Amended Complaint, that Bank of America and not BAC Home Loan Servicing, LP is the proper party defendant in this case.  Dkt. No. 78, Pl.'s Lt.-Br., dated May 14, 2009.  Previously, Defendants informed the Court that Countrywide Home Loans Servicing LLP, the servicer of Plaintiff's mortgage loan, changed its name to BAC Home Loans Servicing, LP, and further noted that it is an indirect subsidiary of Bank of America N.A.  Dkt. No. 71, Defs.' Lt.-Br., dated Apr. 30, 2009.  Further, Countrywide Home Loans, Inc., is a wholly owned subsidiary of Countrywide Financial Corporation, which is the wholly owned subsidiary of Bank of America Corporation, all being distinct legal entities.  *Id.*

Plaintiff contends that Bank of America is indeed equally liable for the service of Countrywide companies' mortgage loans which is supported by her mere reference to the Countrywide's website whereat, as she claims, Bank of America admits to being responsible for BAC Holdings.  Dkt. No. 78 at pp. 1-2.[18]  Under the terms and conditions provision for home loans, Bank of America notes that its family of

---

[18]  The website is http://my.countrywide.com/terms.aspx.

companies includes BAC Home Loan Servicing, LP.  Reliance upon this notation as confirmation that Bank of America is the entity most responsible for the issues related to servicing mortgage loan is misapprehended.

With the exception of including BAC Home Loan Servicing, LP within its rosters of companies, nowhere within this website does Bank of America assume liability for any of its direct and indirect subsidiaries.  All that we have here is a single website that enumerates the terms of conditions applicable to all within the Bank of America family of companies.  Employing a single website to provide the conditions and terms for all of these companies does not confer upon the Bank of America full managerial, operational, and servicing roles for each subsidiary.  To be precise, it is apparent that, depending on the nature of the account, a customer is directed to a particular company.  For mortgage loans, the customer is directed to BAC Home Loans Servicing, LP, whereas deposit accounts are directed to Bank of America, N.A. and insurance policies to Balboa Insurance Group.  Upon a more in-depth review of the customer center user agreement, it becomes obvious that BAC Home Loan Servicing, LP has it own customer center website and if a customer needs assistance with "any service or information provided through it, or if [she] need[s] to communicate with BAC Home Loan Servicing, LP," she is guided to BAC Home Loan Servicing, LP, not Bank of America. *See supra* note 18.  In fact, this website is

identified as "proprietary property of BAC Home Loan Servicing, LP." *See supra* note 17. Moreover, and as general rule of law, a shareholder, which would include a parent corporation's controlling ownership interest in a subsidiary, cannot be held liable for the acts of the corporation, without a greater showing of dominion and control over the subsidiary. *Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 638 (S.D.N.Y 2005) (citing, *inter alia*, *Billy v. Consol. Mach. Tool Corp.*, 51 N.Y.2d 152, 163 (1980)). Adding Bank of America N.A., as a party would be futile. Accordingly, Plaintiff is denied permission to join Bank of America as a party.

### III. CONCLUSION

For all of the reasons stated above, Plaintiff's Motion to Amend, even with all of its subsequent permutations, is **denied**. Consequently, the remaining cause of action, which was permitted by Judge Kahn, singularly alleges that Defendants failed to timely respond to Plaintiff's purported qualified written request, dated June 15, 2007. Accordingly, this Count still stands and made be amended consistent with this Memorandum-Decision and Order.[19]

   **IT IS SO ORDERED**.

_____

[19] The Court previously noted that Defendants do not object to amending this case caption to state BAC Home Loans Servicing LP f/k/a Countrywide Loans Servicing LP. *See supra* p. 14. The parties should advise the Court if the caption should be so amended.

June 19, 2009
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge