UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Kim Gorham-Dimaggio,

                           Plaintiff,

    v.                                           1:08-CV-00019 (LEK/RFT)

Countrywide Home Loans, Inc.; Countrywide
Home Loans, Inc., LP; Countrywide Home
Loans Servicing, LP; Countrywide Financial
Corp.; Investor Number 1688597323.

                           Defendants.
_____

## MEMORANDUM-DECISION AND ORDER

**I.**    **INTRODUCTION**

       Presently before the Court are a Motion for summary judgment filed by Plaintiff Kim Gorham-DiMaggio ("Plaintiff") and a cross-Motion for summary judgment filed by Defendants Countrywide Financial Corp. and its affiliates Countrywide Home Loans, Inc., Countrywide Home Loans, Inc., LP, and Countrywide Home Loans Servicing, LP, (collectively, "Defendants"). Investor Number 1688597323 is named as a Defendant, however, information regarding the named investor has not been presented. References to Defendants are solely to the combined Countrywide entities, as Plaintiff does not distinguish among them.

**II.     BACKGROUND**[1]

On June 13, 2003, Plaintiff, a resident of New York, obtained a mortgage loan on her home from the Defendants in the amount of $145,350. Mortgage Contract (Dkt. No. 17, Attach. 9). Under the terms of the mortgage contract ("the Note"), Plaintiff became responsible for making all monthly payments in principle and escrow to the Defendants, including Defendants' projections of escrow. Note §3(a). The Note further specifies, "[i]f [Plaintiff] do[es] not pay the full amount of each monthly payment on the date it is due, [Plaintiff] will be in default." Am. Compl. ¶ 19. A previous default was settled by the parties in September 29, 2005, and a subsequent dispute was settled in October 2006. Aff. of David L. Permut at ¶5 (Dkt. No. 17, Attach. 3); Am. Compl. ¶ 29. The current interest owed under the mortgage is a fixed rate reached as a result of the settlement in that dispute. Id.

In March 2007, Plaintiff received a bill from the Defendants for $1,506. Am. Compl. ¶ 53. The amount of the March bill was an unexpected increase for the Plaintiff, as her combined monthly principal and escrow payment had been $1,411 since November 2006. Id. ¶ 52. Plaintiff paid the full amount of the March bill. Id. ¶ 53. In April 2007, Plaintiff received a bill in the amount of $1,528, but paid only $1,411. Id. ¶ 59. The check was not cashed, but was returned to the Plaintiff on May 5, 2007 because it was $117 dollars less than the amount owed under the April bill. Id. ¶ 8, 13. Plaintiff claims the Defendants then prevented her from accessing her online account on May 5, and defaulted her on the mortgage loan at some time thereafter. Id. ¶ 8.

Subsequently, Plaintiff's attorney contacted Defendants' attorney from the first dispute,

---

[1] The factual recitation appearing in this background section are primarily taken from the Plaintiff's Amended Complaint, as cited.

David L. Permut, via email on June 13, 2007 requesting an explanation for the escrow increase. Am. Compl. ¶¶ 67, 68. An email response from Permut explained that the increased amount was established following an escrow re-analysis that was performed by the Defendants on February 16, 2007. Id. ¶ 68. The email further stated that notice of the increase was included in Plaintiff's February 2007 billing statement. Id. ¶ 68. Plaintiff maintains she never received a statement of the escrow increase in February, and that her billing statements represented that the escrow re-analysis would not be performed until April 2007. Id. ¶¶ 70, 71. Plaintiff does not allege that she attempted to call Countrywide for an explanation, but instead claims that several Countrywide representatives called her around this time in an unrelated attempt to convince her to refinance her home, during which calls they assured her that the escrow amount had not increased, and would not increase until September 2007. Am. Compl. ¶¶ 71, 75, 97. These representatives sent Plaintiff screen shots of her account information on February 28, 2007 and July 18, 2007 to verify this information. Id. ¶ 84. On both occasions, the screen shot showed that the total monthly payment was still $1,411, and that the escrow amount had not changed. Id. ¶ 84. Even after the March and April increase, Plaintiff claims her monthly billing statements contained information that an escrow re-analysis would not be performed until April 2007. Based on this, she believed that the amount she was being charged was incorrect. Id. ¶ 71.

Unsatisfied with the earlier response from Mr. Permut, Plaintiff sent Defendants a written request for information regarding the escrow increase "on or about June 15, 2007." Am. Compl. ¶ 86. Plaintiff claims she never received a response to her request. Id. ¶ 86. Without stating when it happened, Plaintiff claims that the Defendants sent her account to a foreclosure attorney. Am. Compl. ¶ 94. Plaintiff further argues that Defendant's numerous call-centers or help-lines

3

established to assist defaulted borrowers were never specifically offered to assist her. Id. ¶ 95-96. Plaintiff proceeded to file the present action on January 7, 2008.

On December 17, 2008, this Court dismissed all but one of Plaintiff's assorted claims brought on the basis of the foregoing factual allegations. See generally Mem. Dec. & Order (Dkt. No. 21) (dismissing Fair Housing Act discrimination claims under 42 U.S.C. §§ 3604, 3605; Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.,* discrimination claims; a Real Estate Settlement Procedure Act, 12 U.S.C. §2601 *et seq.*, claim based on the email exchange between Plaintiff's attorney and Mr. Permut; breach of fiduciary duty claim; breach of contract claim; breach of settlement agreement claim; NY General Business Law § 349 claim; fraud claim; negligence and gross negligence claims; conspiracy to defraud claim; and defamation of credit claim). The sole claim surviving Defendants' Motion to dismiss comes now before the Court as the subject of the parties' summary judgment Motions. Listed as the Fifth Claim in Plaintiff's Amended Complaint, it alleges that Defendants violated the Real Estate Settlement Procedure Act (RESPA), 12 U.S.C. §2601 *et seq.*, by failing to adequately respond to her qualified written request within 20 days in accordance with the mandatory guidelines.

**III.   STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A court must "'resolve

all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing the judgment.'" Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). "Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." Brown, 257 F.3d at 251 (citation omitted).

**IV.    DISCUSSION**

For Plaintiff to prevail on a RESPA violation under 12 U.S.C. § 2605(e)(1)(A), it is necessary that she be able to establish that she sent, and the Defendants received, a "qualified written request" that would trigger the Defendants' obligation to acknowledge the request; Plaintiff

5

must then be able to prove that Defendants failed to meet this obligation. Plaintiff's sole claim for failure to adequately respond to a qualified written request thus arises under the RESPA provision stating:

> "[i]f any servicer of a federally related mortgage loan receives a *qualified written request* from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period."

12 U.S.C. § 2605 (e)(1)(A)(emphasis added). 12 U.S.C. § 2605(e)(1)(B) defines a qualified written request as:

> "[A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

Plaintiff alleges she submitted a qualified written request, as defined under the statute, when she sent a letter to Defendants on or about June 15, 2007 seeking information regarding an escrow increase. Plaintiff further contends that Defendants failed to send her a written response acknowledging receipt of the correspondence within 20 days, as required under 12 U.S.C. § 2605(e)(1)(A) when a subject servicer receives a qualified request. Also contained within Plaintiff's

summary judgment Motion are allegations that the Defendants destroyed Plaintiff's qualifying letter, in that a letter opening machine caused the letter to sustain damage, and that they destroyed their acknowledgments of that letter (which Plaintiff disputes ever receiving), in that Defendants "recreated" them in March of 2009.  See Pl. Mot. for Sum. Judg. at 3, 5.  Further, Plaintiff, assuming for the sake of argument that Defendants did send an acknowledgment, asserts that the acknowledgment does not comply with the terms of 12 U.S.C. § 2605 (e)(1)(A).

Conversely, Defendants argue that Plaintiff's letter does not constitute a qualified written request, or at least that there is a question of fact as to whether the letter is so qualified; moreover, Defendants argue that, assuming the letter is qualified, they have submitted proof that they sent a sufficient acknowledgment in response to the letter, regardless of the fact that it was sent to the wrong corporate address,[2] contained illegible portions and was substantively deficient in expressing or explaining its complaint.  See Def.'s Mot. for Sum. Judg. at 10-16.  Accordingly, Defendants seek summary judgment on Plaintiff's remaining claim, contending that they have established that no violation of 12 U.S.C. § 2605(e)(1)(A) occurred.

Pursuant to Federal Rule of Civil Procedure 56(c), the Court finds it necessary to grant

---

[2] Countrywide demonstrates that its monthly statements include an address for payments and an address for correspondence such a qualified written request; mail reaching the former address is opened by machine while mail reaching the latter is opened by hand.  Defendants argue that it is therefore more likely than not that the Plaintiff's letter was sent to the payment address, and Plaintiff offer no argument or evidence controverting this conclusion. The record shows that Plaintiff cannot recall and otherwise does not know the address to which she sent her letter.  Nonetheless, the likelihood that the letter was misdirected is not the basis on which this Court will resolve the instant Motions, even though it may provide such a ground. See Bally v. Homeside Lending, No. 02-cv-5799, Inc., 2005 U.S. Dist. LEXIS 20123 (N.D. Ill. Sept. 8, 2005) ( holding that even if the plaintiff's letters had been faxed or otherwise received by the mortgage servicer, the debtor failed to send her correspondence to the correct address as required by RESPA and, thus, the debtor failed to create a triable issue of fact that she properly sent them to the servicer to implicate that servicer's obligations under RESPA).

summary judgment in favor of Defendants and to deny Plaintiff's summary judgment Motion. Upon review of the record, it is clear that there is no genuine issue for trial and that the record precludes a rational trier of fact from finding for Plaintiff. See Matsushita Elec., 475 U.S. at 586-587. The Court need not inspect Plaintiff's Motion for fatal non-compliance with Local Rules 7.1(a)(2) and (a)(3), from which Defendants contend the Motion suffers, as the merits of the case operate to entirely defeat Plaintiff's claim.

First, the Court finds that the letter sent by Plaintiff on or about June 15, 2007, from which her remaining claim arises, is not a qualified written request within the meaning of 12 U.S.C. § 2605(e)(1)(B). While the letter has evidently sustained damage such that it is approximately one quarter of one inch shorter than eleven inches in length, a generous reading of its text nonetheless reveals it as deficient. Dkt No. 92, Ex. F; Dkt. No. 94, Ex. 2; Dkt No. 88, Aff. 1. At best, it can be made out to indicate that the Plaintiff is "disputing the escrow" and may desire a "full accounting of [her] escrow." Dkt No. 94, Ex. 2. Thus, the letter's single sentence does not contain "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error" or provide "sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Plaintiff's failure to either describe in writing why she perceived there to be an error in her account or explain what she wanted from the Defendants beyond the general term "accounting" prevents her letter from functioning as a "qualified written request,"thereby not triggering an acknowledgment duty under RESPA.

Defendants, however, have submitted evidence establishing that they did indeed acknowledge Plaintiff's letter. Therefore, even if there were a genuine issue as to whether the letter was a qualified written request, the Court must grant summary judgment in favor of Defendants. On

or about June 29, 2007, Defendants mailed two letters to Plaintiff, each in response to her communication, though Plaintiff states that she never received these documents. Dkt. No. 92, Decl. of Kyle Heisen; Aff of Richard DiMaggio., Ex. B; Decl of Heather Fisher. One wrote, in part: "Thank you for your correspondence addressed to Countrywide Home Loans . . . . Regrettably, we are unable to complete your request as the correspondence received is illegible." Dkt. No 88, Ex. 3. The other wrote, in part: "We recently received your correspondence . . .; however, more information is needed to continue our research." Dkt. No 92, Ex. P.

     The manner in which the Defendants prove that they sent these acknowledgments does not implicate the documents' validity, although Plaintiff seeks to make much of the Defendants' record keeping. Through the declarations of employees, the Defendants detail their routine business practices relevant to the handling of Plaintiff's correspondence; they show those practices' specific application to the case of Defendants; they substantiate the contents of the declarations with records, which Defendants maintain in the regular course of business and have a duty to keep, showing the production and handling of the acknowledgment letters consistent with the personal declarations and Defendants' practices. See Dkt. No. 92, Decl. of Kyle Heisen; Decl. of Heather Fisher; Decl. of Lloyd D'Souza; Decl. of Kenneth Rudd. Accordingly, Defendants show that two employees, Lloyd D'Souza and Heather Fisher separately responded to Plaintiff's letter. Dkt. No. 92, Decl. of Kyle Heisen. D'Souza opened a template form letter, which automatically caused certain information such as the date to be entered, and saved the letter to a network drive, whereupon it was printed and mailed from California. Id. Defendants did not retain individual copies of this type of acknowledgment, but rather kept a database which records these facts of the communication. The template form has remained available on Defendants' network, so that a copy generated from it

automatically displays the date on which that iteration was printed. Id.  The acknowledgment sent by Heather Fisher was carried out in substantially the same way.  She accessed a form letter template and saved it to Defendants' network, from which it was then printed and sent. Id.  Defendants thus establish that they acknowledged Plaintiff's letter "within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." 12 U.S.C. § 2605 (e)(1)(A).

     Plaintiff is unable to demonstrate that a triable issue remains.  The declaration that she never received the acknowledgments cannot, of course, call into question whether Defendants actually sent them as indicated by their database and employees. Dkt. No. 92, Aff of Richard DiMaggio., Ex. B.  Plaintiff's only other arguments presented against the conclusive quality of the record are patently without merit.  First, it is contended that the Defendants' inability to produce the original or contemporaneous copies of the original acknowledgments creates a genuine of issue of fact.  Dkt. No. 88, Mem. of Law at 5.  Quite simply, this is not so, as Plaintiff does not provide any evidence supporting her claim or undermining the record that establishes Defendants' acknowledgments. Secondly, Plaintiff argues that the acknowledgments are deficient on the basis that it cannot be known whether the Defendants' communications respond to Plaintiff's specific inquiry. Id. at 6.  If in some circumstances, there can be a question whether a document sent by a mortgage service is actually in acknowledgment of a qualified written request, see Rawlings v. Dovenmeuhle Mortgage, Inc., 64 F. Supp. 2d 1156 (M.D. Ala. 1999), this is certainly not such a case.  Both the content of the Defendants' communications and their temporal relationship to Plaintiff's letter ("unable to complete *your request*" (Souza letter); "*recently* received *your correspondence*"(Fisher letter) (emphasis added)) leave no doubt that the documents were sent in response to Plaintiff's letter.  Dkt.

No. 88, Ex. 3; Dkt. No. 92, Ex. P. If the communications contain little detail or reference to the text of that letter, that fact would seem to be because of the minimal and unclear contents of Plaintiff's writing. Resolving all ambiguities and crediting all factual inferences that could rationally be drawn in favor of Plaintiff, the Court finds that the whole record shows that there is no genuine issue of fact that would allow her RESPA claim to survive Defendants' Motion for summary judgment. Plaintiff's letter does not meet the requirements of a qualified written request, and, more importantly, Defendants acknowledged the letter as though it were. Accordingly, Defendants' cross-Motion is granted and Plaintiff's Motion for summary judgment is denied.

In addition to moving for summary judgment, Plaintiff includes allegations of destruction of evidence concerning escrow "February-April 2007" statements. Dkt. No. 88, Mem. of Law at 7. While it appears that misunderstandings between the parties are at the root of these allegations, the purpose of the allegations in the present Motion is not recognized by this Court. See Dkt. No. 92, Decl. of Kyle Heisen ¶ 10; Ex. M (explaining that Defendants retain information and records, consisent with requirements of 24 C.F.R. § 3500.17 but does not retain copies of escrow documentation in the form it is sent to customers); Dkt No. 128 at 3 (letter brief summarizing that there was never an April 2007 scrow analysis or statement, only a February one). The allegations have no relation to or bearing upon Plaintiff's sole claim, and, hence, they do not impact the Court's analysis of the alleged failure to respond to Plaintiff's June 15, 2007 letter. Plaintiff's summary judgment briefing concludes with references to "an adverse inference," "reconsideration" and "an interlocutory appeal," which may be on the basis of these allegations. Id. at 12. To the extent that the Court can decipher Plaintiff's characterizations of Defendants' record-keeping and compliance with statutory duties, they do not state a claim; Plaintiff shows neither the destruction of any

11

evidence not the breach of a duty owed to her under federal regulations.  In short, while Plaintiff does not actually move for and makes arguments specifically aimed at reconsideration, there is absolutely no showing that would justify such a result with respect to any of the Court's prior rulings in the instant matter.  <u>Shannon v. Verizon New York, Inc.</u>, 519 F. Supp. 2d 304, 307 (N.D.N.Y. 2007) (the stringent standard for reconsideration is: "(1) an intervening change in law, (2) the availability of evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice.") (citations omitted).  Further, the grant of summary judgment for Defendants renders the references to "an adverse inference" and "an interlocutory appeal" moot, to the extent such language may be construed as moving for this Court to act.

### V.   CONCLUSION

Therefore, based on the foregoing, it is hereby

**ORDERED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 88) is DENIED, and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 92) is GRANTED, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:     March 08, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

12